640 So.2d 723 (1994)
Orvle W. NICKS, Jr., et al., Plaintiffs-Appellees,
v.
TECHE ELECTRIC CO-OP. INC., et al., Defendants-Appellants.
No. 93-1418.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1994.
*724 Karl W. Bengtson, Lafayette, for Orvle W. Nicks Jr., et al.
Norman P. Foret, Lafayette, for Teche Elec. Coop. Inc., et al.
L. Richard Westerburg Jr., Baton Rouge, for Gulf States Utilities Co.
Before GUIDRY, C.J., and YELVERTON and WOODARD, JJ.
GUIDRY, Chief Judge.
Defendant, Teche Electric Cooperative, Inc. (Teche), appeals a judgment rendered in favor of plaintiffs, Orvle Nicks and Edwin Myles, which held Teche liable for the injuries they sustained when their vehicle left the traveled portion of Louisiana Highway 83 and struck a Teche-owned replacement utility pole. The pole was lying in a grassy area just beyond the graveled shoulder of the roadway. The accident occurred on March 28, 1990.[1]
Plaintiffs sued Teche and Gulf States Utilities Company. On joint motion, Gulf States was dismissed from the suit prior to trial. After a bench trial, the trial court determined that Teche breached its duty to keep its equipment as far away from the traveled portion of the roadway as possible or, at the very least, to place warning signs and/or barricades near the utility pole to warn motorists of its presence. The trial judge found Teche to be totally at fault. The court awarded the driver, Nicks, $40,000 in general damages and $9,536.88 in medical expenses and his passenger, Myles, $2,500 in general damages, $2,800 in lost wages, and $346 in medical expenses. Teche's motion for new trial was denied and this appeal followed.
On appeal, Teche assigns two errors. First, Teche urges the trial court erred in concluding that Teche owed a duty to plaintiffs under the circumstances. Secondly, Teche contends the trial court erred in concluding that its placement of the utility pole was a cause-in-fact of the accident. Teche does not contest the reasonableness of the court's awards to the plaintiffs. Thus, quantum is not an issue.
After a thorough review of the record in light of applicable legal principles, we affirm. In affirming, we note that the trial judge rendered excellent reasons for judgment which are attached hereto as an unpublished appendix.

FACTS
The accident occurred during the pre-dawn hours as Nicks and Myles were en route to the Port of West St. Mary to work as oyster fishermen. At the accident site, Highway 83 is a straight and level two-laned highway with eight foot graveled shoulders on both sides. Plaintiffs were the only two witnesses to the accident. Plaintiffs testified that as they were traveling on Highway 83, a vehicle in the opposite lane approached with its headlights set on bright. Nicks, who was driving 55 miles per hour, flicked his bright lights on twice to warn the oncoming driver. As Nicks did this, the oncoming vehicle suddenly veered into his lane of travel. To avoid a collision, Nicks steered onto the right shoulder and applied his brakes. His vehicle, a Nissan pickup truck, skidded off of the shoulder and into a grassy sloped area. The truck stopped abruptly when it came into *725 contact with Teche's 50 foot long utility pole. Neither Nicks nor Myles saw the utility pole before the collision. The offending vehicle continued on its way and remains unidentified, as does its driver.
After getting a ride to their employment site from a following motorist, Nicks and Myles returned to the accident site. According to the plaintiffs, the utility pole was located, in high grass, approximately nine to ten feet from the blacktopped roadway near the edge of the shoulder. They also observed creosote marks left by the pole in the grass when it was moved by the truck. Four photographs of the accident site, taken by plaintiffs and their investigator, were entered into evidence.
Senior Trooper Richard Fleming of the Louisiana State Police arrived at 5:50 a.m. His accident report reflects that the pole was approximately 20 feet from the edge of the road. However, he did not recall measuring the actual distance and, by the time of trial, had no independent recollection of his investigation. For these reasons, the trial judge discounted his testimony concerning the pole's distance from the roadway.
Larry Spears, plaintiffs' safety expert, stated that, as a general rule, utility companies have an obligation to place utility poles as far as possible from the traveled portion of the highway so as to provide a "clear recovery area" for the driving public. Pursuant to the American Association of State Highway Transportation Officials (AASHTO) guidelines adopted by the state and federal government, the recommended "clear recovery area" for Highway 83, a "federal aid" highway, is 30 feet from the traveled portion of the highway. If placement of things within the 30 foot area is compelling, then such objects must be equipped with adequate lights or markers to warn the driving public. Spears further stated that the distance from the asphalt edge of the highway to the existing utility pole line is 38 feet. Spears opined that Teche should have placed the pole farther away from the highway; placed adequate warning devices on or near the pole; or, returned the pole to its yard.
James Laque,[2] Teche's Director of Engineering and Operations, testified that he supervised the replacement of utility poles along Highway 83 in 1990. The project lasted three months and was ongoing at the time of this accident. According to Laque, it was a routine practice for Teche workers to leave uninstalled poles at the worksite to be installed the next day. The line foreman was vested with full discretion to leave an uninstalled pole at the worksite. Additionally, he stated that Teche's policy was to place the pole as far from the highway as possible.
Ronald Hebert, Teche's line foreman in charge of the project, stated that, by using the hydraulic lifter on the truck, the pole could have been placed 15 to 20 feet from the passenger side of the truck. He stated that, because of the marshy condition of the surrounding land, the crew could not place the pole that far from the roadway. This testimony conflicts with the testimony of Nicks and Myles, who stated that the grassy area was relatively dry when they got out of the truck. According to Hebert, the stiff legs on the truck tend to sink into soft ground. He admitted that a "pole hook" could be used to move the pole once it is placed on the ground. He further stated that Teche workers normally place warnings or markers on an uninstalled pole if they perceive the existence of some sort of danger. However, in this situation, no warnings were placed on or near the pole.
Dwayne Evans, a consulting traffic engineer, also testified on behalf of Teche. He stated that, pursuant to the AASHTO Roadside Design Guide, an 18 foot "clear recovery area" is recommended for this type of highway. Teche argues that, accepting Trooper Fleming's 20 foot measurement as true, the pole was placed outside this "clear recovery area". As noted above, however, the trial court discounted the trooper's measurements. Evans also observed that the purpose of warning devices is to merely indicate the presence of a potential hazard. If a vehicle is out of control off of the road as in the present case, Evans opined that the warning devices would not necessarily allow the driver to avoid striking the hazard.

*726 OPINION

The existence of a legal duty is a question of law. Additionally, whether a particular risk of harm is included within the scope of a particular legal duty is also a legal issue to be resolved by the court. Dillon v. Louisiana Power and Light Co., 557 So.2d 293 (La.App. 4th Cir.1990), citing LeBlanc v. Wall, 430 So.2d 1130 (La.App. 1st Cir.1983), writ denied, 438 So.2d 571 (La.1983). However, the question of whether a particular defendant has breached the duty owed to a particular plaintiff is a question of fact. Phillips v. K-Mart Corp., 588 So.2d 142 (La. App. 3rd Cir.1991).
The duty-risk analysis requires that the court inquire first as to whether the defendant's action was a cause-in-fact of the accident; second, whether the defendant owed a duty to the plaintiff which was breached; and, whether the risk of harm encountered by plaintiff is within the scope of the duty. Shafer v. State, DOTD, 590 So.2d 639 (La.App. 3rd Cir.1991). A defendant's negligent conduct is a cause-in-fact of harm to another if it is determined to be a "substantial factor" in bringing about the harm. Guilbeau v. St. Landry Parish Police Jury, 600 So.2d 859 (La.App. 3rd Cir.1992), writ denied, 606 So.2d 544 (La.1992).
In concluding that Teche's actions were a cause-in-fact of plaintiffs' injuries and that Teche owed a duty to keep the "clear recovery area" free of obstructions, the trial court relied principally upon Oster v. State, DOTD, 582 So.2d 1285 (La.1991). In that case, the court stated that DOTD's duty as to the area off of the shoulder but within the right of way is to maintain the land in such a condition that it does not present an unreasonable risk of harm to motorists using the adjacent roadway or to others, such as pedestrians, who are using the area in a reasonably prudent manner. The same duty to maintain a reasonably safe right of way area should and, in our view, does apply to a utility company which uses the area to do repair or pole replacement work.
Our analysis of the case sub judice leads us to conclude that the trial judge did not err in determining that the placement of the utility pole within 10 feet of the roadway was a cause-in-fact of the harm caused to plaintiffs. While Nicks was forced from the road by the oncoming motorist, it is clear that, had the pole not been left lying at a position within the "clear recovery area", the accident would not have occurred as it did and Nicks would have had a much greater opportunity to regain control of his truck. Photographic and testimonial evidence presented at trial substantiate this conclusion. Teche's action was a substantial factor in causing plaintiffs' injuries.
The court's imposition of a duty upon Teche to keep its equipment outside the "clear recovery area" was also not error. Persons and private entities using the area alongside the highway have a duty to not create obstructions or perilous conditions for motorists who inadvertently or by reason of necessity stray from the traveled portion of the highway. The court's use of the "clear recovery area" concept in defining the duty owed reflects that concept's use in AASHTO guidelines adopted by the state and federal governments. Considering the particular circumstances of this case, the imposition of such a duty upon a utility company is not unreasonably burdensome. Finally, we agree with the learned trial judge that the risk of harm encountered by plaintiffs was within the scope of the duty breached by Teche.
For these reasons, we affirm the judgment of the trial court. All costs of this appeal are to be paid by Teche Electric Cooperative, Inc.
AFFIRMED.

APPENDIX

ORVLE W. NICKS, ET AL

VS.

TECHE ELECTRIC COOPERATIVE, INC., ET AL

16TH JUDICIAL DISTRICT COURT

PARISH OF IBERIA

STATE OF LOUISIANA

DOCKET NO. 72641

REASONS FOR JUDGMENT
Plaintiffs filed suit against Teche Electric for damages arising out of a vehicular accident which occurred on March 28, 1990.
*727 Trial was held on February 26, 1993. Testifying for plaintiffs were: plaintiffs, Orvle Nicks and Edwin Myles; Jim Locket, Director of Engineering Operations for Teche Electric; Ronald Hebert, line foreman for Teche Electric; Richard Fleming, State Policeman; and Larry Spears, an expert in highway safety. Testifying for defendant was its expert in accident reconstruction and highway safety, Dwayne Evans. The depositions of Dr. Louis Blanda and Dr. George Cousin were entered into the record. Medical bills of the plaintiffs were also submitted into the record. The court took the matter under advisement to determine liability and damages.
The plaintiffs testified to the following facts of the accident. Their testimony was not contradicted. Plaintiff Orvle Nicks was driving his Nissan Sentra pickup truck on Louisiana Highway 83 with plaintiff Edwin Myles as passenger. It was early morning before the sun had risen and Myles and Nicks were on their way to work. Suddenly Mr. Nicks observed a car two car lengths ahead coming towards them in their lane of traffic. To avoid a head-on collision, Mr. Nicks hit his brakes and skidded off the road, onto the shoulder and into the grassy area adjacent to the road. When the truck skidded into the grassy area, it struck a utility pole which had been left lying on the ground by Teche Electric. The impact caused Mr. Myles to hit his head on the back windshield and he jerked his lower back. Mr. Nicks hit his chest on the steering wheel, his head on the windshield, and injured his knee and foot. They both testified that they could not see the pole from the roadway and it was not marked with reflectors, flags or lights. They stated that one end of the pole was up towards the shoulder and the other end was sloping down towards the ditch.
As testimony at trial established, prior to the accident Teche Electric was engaged in replacing its power line and utility poles along side the highway. This job involved replacing Teche's old poles with new, longer poles. Teche would bring several of its new poles to the site, drop them at the roadside, then place them into the ground along the power line. Jim Locket, supervisor of this particular project, testified that on some days they could not complete the installation of all the poles left on the roadside before leaving the work site. Therefore, on occasions, Teche left its poles along the edge of the roadway overnight or for several days. Mr. Locket states that it was policy to leave the pole as far away from the highway as possible.
Ronald Hebert, line foreman for Teche Electric who was in direct supervision of the project, testified that on the day before the accident, they had left one 50' utility pole lying flat on the ground about 25' from the shoulder. He testified that there are methods to move the pole further from the road, such as putting a hook in it and rolling the pole. However, he said that the end of the pole was in marshy land and it would have been difficult to move. Mr. Hebert also testified that he did not put any reflectors on the pole although he was aware the safety book specified that reflectors should be used.
Contrary to Mr. Hebert's testimony, plaintiffs contend that the ground was not wet or soft. They both stated that it was dry grass and gravel. Furthermore, Mr. Myles testified that several hours after the accident, he returned to the scene and measured the distance from the road to the pole. The pole was only 10 feet from the road. Plaintiff submitted a photo into the record which reflects the measurement.
Larry Spears, plaintiffs' expert in highway safety, testified that Louisiana Highway 83 is governed by regulations issued by the U.S. Department of Transportation regarding utilities. The basic rule for leaving utility poles on the side of highways is to leave them sufficiently far away so that there will be a recovery area for the driving public. The recommended distance is 30' from the edge of the travelled portion of the roadway. The placing of utility poles closer than this is not necessarily prohibited but various safety factors must be considered. If a pole cannot be moved, it is mandatory to mark the pole with lights and barricades.
Richard Fleming, the state police officer, testified that in his accident report he wrote *728 that the pole was 20 feet from the shoulder of the road. However, he did not measure the distance and was only speculating. He has no independent memory of the investigation of the accident.
Defendant's expert, Dwayne Evans, testified that a safe recovery area in this case would be 18' as according to the American Association of State Highway and Transportation Office (AASHTO). He also stated that had barricades been erected, they would have been of no help if the truck was out of control.
At the conclusion of the trial, the court ordered post trial memoranda on the issue of liability of the defendant.
In defendant's post-trial memorandum, Teche cites authority for the proposition that a utility company has no obligation to guard against rare exigencies such as an out of control vehicle leaving a traveled roadway. Armand v. LP & L Co., 482 So.2d 802 (La. App. 4th Cir., 1986). This case, however, deals with a utility pole which has already been placed and set, not one left lying on the ground.
Plaintiffs submit that most reported decisions involving obstructions off of the traveled portion of the highway involve claims brought against DOTD. These cases provide guidance in the instant matter. As the Supreme Court noted, "persons who use the areas alongside the highways are liable for their improper use when they create a danger that causes injury". Raphael Bros. v. Cerophyl Labs, 211 La. 354, 30 So.2d 116 (1947). And the court in Page v. Green, 306 So.2d 847 (2nd Cir.1975), noted that private citizens have a duty to meet a standard of care at least equal to that required of governmental employees, when they create obstructions or other perilous conditions in the highways.
In Oster v. DOTD, 582 So.2d 1285 (La. 1991), the Supreme Court stated that as to the area off the shoulder of the road, but within the right-of-way, DOTD owes a duty to maintain the land in such a condition that it does not present an unreasonable risk of harm. In analyzing the liability issue, the Court noted that in determining whether there existed an unreasonable risk of harm, the court should look to the likelihood and magnitude of the harm as balanced against the utility of the thing complained of, the cost to defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident. Coincidentally, the court noted that "a situation could arise in which a motorist, due to an emergency situation not caused by his own fault, is forced to leave the traveled portion and shoulder of the road. In such a situation, any roadside ditches which present a danger should be marked adequately with a hazard delimiter." 582 So.2d at 1291.
Upon reviewing the facts of the case before us and the testimony adduced from the witnesses, the court finds that defendant Teche was negligent in leaving the pole along side the roadway in such a manner. The court is convinced that the pole was only 10' from the shoulder of the road. Although state police officer Fleming testified it was about 20', the court notes that he did not measure the distance. Plaintiff Myles did measure the distance and presented photographs of the measurement. The court finds that plaintiff has proven by a preponderance of the evidence that the pole was only 10' feet from the shoulder.
In applying the formula utilized in the Oster case, the plaintiff's action of leaving the travelled portion of the highway to avoid a head-on collision has distinct social utility. On the other hand, Teche's decision to leave a pole a few feet off the shoulder of the road presents an unreasonable risk when considering the minimal cost which defendant would incur if it had moved the pole further from the road or returned it to the storage yard.
Teche is also responsible to plaintiff due to Teche's violations of certain state and federal traffic safety regulations. First, DOTD Regulations pertaining to utility installations provides that utility companies must obtain a permit before performing any work on the highway right-of-ways. Teche Electric did not obtain a permit to do the work along Highway 83. Second, DOTD regulations provide that utility companies comply with *729 certain safety standards when installing power lines. Specifically, safety precautions for the protection of the travelling public must be observed: utility poles should not be constructed closer than 30 feet to the shoulder; signs, flags, barricades and reflectors must be used during construction and maintenance. Third, DOTD has a general uniform traffic safety requirement for all highway construction and maintenance. Included in the safety requirements is a provision that a roadside recovery area should be kept clear and as wide as practical to accommodate run-off-the-road incidents. Equipment and materials should be stored so as not to be vulnerable to emergency incidents.
Finally, Teche is also in violation of certain AASHTO standards. The AASHTO provides that a clear recovery area, preferably of about 30 feet, is recommended for rural highways. This recovery area should be clear of unyielding objects. It specifically states that utility companies pay critical attention to the location of their poles and at the minimum they should be located outside the appropriate clear zone. (Although the court is aware that this refers to erected poles, it is of the opinion that equipment left lying around by the utility company should adhere to this clear zone as well).
The court finds that these regulations create a duty on the part of Teche to keep its equipment as far away from the traveled portion of the roadway as possible. At the very least, Teche should have placed warning signs and/or barricades.
For the above reasons, the court finds that Teche is liable to plaintiffs for the injuries sustained as a result of the accident.
The court is now called upon to review the damages suffered by each plaintiff. Mr. Myles, age 28, the passenger of the car, testified that he hurt his back in the accident. He was treated by Dr. Cousin who gave him some medication. Mr. Myles stated that he missed two months of work as an oyster farmer. He made approximately $100.00 to $150.00 per day. He also did carpentry work before the accident but was not able to do this for a couple of months. Dr. Cousin's deposition revealed that he only treated Mr. Myles on one occasion and prescribed medication for his back.
Mr. Nicks, age 62, testified that he hurt his head, back, neck, knee and foot in the accident. Dr. Blanda, an orthopedist, treated him for his injured knee and foot and eventually had to have surgery on his knee. He stated that it was a long time before he could go back to work as a self employed oyster leaseman. He stated that the oyster season is about 8 months of the year. Although at trial he did not testify as to how much he made a day, his deposition reveals that he earned approximately $100.00 a day during oyster season. He testified that his foot and knee are much better but he still cannot stand for long periods at a time.
Mr. Nicks had another accident 28 days after this event. In that accident he suffered pain in the upper portion of his body. Under cross-examination, he stated that this second event aggravated the injuries from this event. Additionally, Mr. Nicks is overweight and has been advised to lose weight but has only succeeded to reducing a small amount.
Dr. Blanda's deposition reflects that he treated Mr. Nicks from June of 1990 to December of 1990. He stated that Mr. Nicks' problems with his neck and back had resolved itself for the most part by the time he began treating him. Mr. Nicks mainly required treatment for his knee. Dr. Blanda found that he had torn cartilage in his knee and a roughening of the joint surface. He performed an MRI and eventually performed outpatient surgical repair on Mr. Nicks' knee. He advised Mr. Nicks to avoid squatting and climbing and he assigned about a 10 to 15 percent disability. Mr. Nicks started back to work on light duty in October of 1990 and Dr. Blanda discharged him in December of 1990.
Dr. Cousin states in his deposition that he treated Mr. Nicks initially after the accident. He prescribed medication for his neck and back and referred him to Dr. Blanda for his knee injury. Dr. Cousin testified that in September of 1990, Mr. Nicks' back problems had resolved.
*730 Upon reviewing relative jurisprudence, the court awards to Mr. Edwin Myles $2500.00 for pain and suffering, $2800.00 lost wages, and $346.00 for his medical bills. Although Mr. Orvle Nicks gave general testimony that he had lost wages, he did not testify how many days he had missed and how much income he had lost. Therefore, the court is not able to award a specific sum for lost wages. Nor is there evidence proving future lost wages. In awarding pain and suffering damages, the court considers that Mr. Nicks did lose some income and therefore, finds Mr. Nicks is entitled to a total award of $40,000.00. Mr. Nicks is also awarded his medical expenses of $9,536.88.
For the above reasons, the court finds in favor of plaintiffs Orvle Nicks and Edwin Myles and against defendant Teche Electric.
Officially granted this 5th day of April, 1993 at New Iberia, Iberia Parish, Louisiana.
 /s/Ann Lennan Simon
 ANNE LENNAN SIMON
 DISTRICT JUDGE
NOTES
[1] At the time of accident, Teche was in the process of replacing certain poles in its existing transmission line located along Louisiana Highway 83.
[2] In her reasons for judgment, the trial judge erroneously refers to this witness as "Jim Locket". We shall utilize the spelling as transcribed into the record of this case.