651 So.2d 476 (1995)
Ronnie HARTMAN, et al., Plaintiffs-Appellants,
v.
VERMILION PARISH POLICE JURY, et al., Defendants-Appellees.
No. 94-893.
Court of Appeal of Louisiana, Third Circuit.
March 1, 1995.
Writ Denied May 5, 1995.
*477 Thomas H. Morrow, Lafayette, for Ronnie Hartman et al.
James L. Pate, Lafayette, for Vermilion Parish Police Jury, et al.
Nicholas Gachassin Jr., Lafayette, for USF & G.
Charles Collins Garrison, New Iberia, Kenny Layne Oliver, Lafayette, for Ravis Menard and La. Farm Bureau Ins. Co.
Charles N. Wooten, Cyd Sheree Page, Lafayette, for Russell Richard, Sr.
Robert Murray Mahony, Lafayette, for L & R Const. Co.
Calvin Eugene Woodruff Jr., Abbeville, for Weston J. Abshire and USF & G.
Robert R. McBride, Lafayette, for SW La. Elec. Membership Corp.
Before: YELVERTON, THIBODEAUX, and DECUIR, JJ.
YELVERTON, Judge.
The appeal in this case arises from summary judgments in favor of four defendants, Winston Foreman, Ravis Menard, the Vermilion Parish Police Jury (Police Jury), and the estate of Sidney Abshire (Abshires), in a suit for damages filed by the survivors of Charlene Hartman and her daughter Holly, both of whom were killed on September 3, 1991, when Stoney Richard ran a stop sign and collided with their vehicle at the rural intersection of Parish Roads 9-15 and 9-18 in Vermilion Parish.
All four of the defendants dismissed by summary judgment were accused of being at fault in making the intersection unsafe. The plaintiffs alleged that Foreman, Menard, and the Police Jury were liable in causing the accident because tall grass in a rice field located in the southeast quadrant of the intersection, prevented each driver from seeing the other's vehicle, resulting in the Hartman vehicle having no chance to take evasive action to avoid the collision. They alleged that the Hartman vehicle, after the collision, slammed into a corner fence post on property of the Abshires' located in the northwest quadrant of the intersection, and that the Abshires were negligent in leaving that fence post there long after they had stopped keeping cattle in that field.
Vermilion Parish Roads 9-15 and 9-18 intersect. Both are two lane, paved rural roads. Parish Road 9-18 runs north and south and is the favored road, while 9-15 *478 runs east and west and has stop signs. The deceaseds' car was on the favored road. The Richard pickup truck was on the road with stop signs. The southeast quadrant of the intersection was farmland. Rice was growing there on the date of the accident. The land was owned by Foreman, but was being farmed by Menard under a verbal lease. The rice field was bordered by a levee one and one-half feet tall, and the levee had Raoul grass growing on top of it. The levees and rice were on private land.
Parish Roads 9-15 and 9-18 had become public roads by parish maintenance of the right-of-ways from fence line to fence line for a period of more than three years. The Police Jury cut the grass along the right-of-ways every three to four weeks, and the grass on top of the levees about three times a year, whenever the harvest of rice would allow it. The grass along Roads 9-15 and 9-18 was freshly mowed on the date of the accident, but the grass on the top of the levee had not been recently cut.
After Stoney Richard's pickup truck ran the stop sign and collided with the deceaseds' car, the car came to rest against a corner fence post in the northwest quadrant of the intersection. The fence post stood on property owned by the Abshires, who had fenced it off for cattle. The corner post was an old railroad bridge timber, and it had been there since 1941.
Reviewing the summary judgment evidence, we find that there are no genuine issues of material fact and that as a matter of law Foreman, Menard, the Police Jury and the Abshires are entitled to judgment dismissing them from the action. For the following reasons, we affirm the judgment of the trial court.
There were no witnesses to the accident. Both occupants of the car were killed. Neither Richard nor his brother, the occupants of the pickup truck, could remember events before the collision. Hartman was traveling north on 9-18, the favored road, while Richard was traveling west on 9-15, the intersecting road which had the stop sign. The Hartman car was a Mercury Cougar. Richard was driving an F-150 Ford pickup. The two drivers were unable to see each other until each vehicle neared the intersection. The driver of the pickup truck failed to stop at the stop sign. The pickup was going 32 miles per hour at a minimum, and Hartman was traveling 37 miles per hour at a minimum. There was no physical evidence that either party tried to take evasive action before the collision. The tall grass in the fields on the edge of the road hampered the drivers' view of each other. The grass on the levees was eleven feet two inches from the east edge of Road 9-18, and was six to eight feet in height. On Road 9-15, the grass was fourteen and one-half feet from the south edge of the roadway.
As part of his investigation into the accident, Trooper Glynn Stutes of the State Police took several photographs of the accident scene. Photograph Numbers 16 and 17 were taken on Road 9-18, approximately 300 and 100 feet, respectively, south of the intersection. The intersection is clearly visible in these photographs and the shoulder of the road and the ditches were recently mowed. The deposition of Stutes indicated that there were no visual obstructions along Road 9-18 which would have prevented a person stopped on Road 9-15 (which had the stop signs) from seeing the traffic on the intersecting road. Two other photographs in evidence, Numbers 18 and 19, were taken on Road 9-15, approximately 300 and 100 feet, respectively, east of the stop sign. At both distances, the stop sign is clearly visible and the shoulder of the road was freshly mowed.
Appellate courts review summary judgments de novo, applying the same standards of review used by trial courts in rendering the judgments at the district court level. Reynolds v. Select Properties, Ltd., 634 So.2d 1180, 1183 (La.1994). A motion for summary judgment is properly granted if there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. The mover bears the burden of proving that no genuine issue of material fact exists and that he is entitled as a matter of law to the requested judgment. All summary judgment evidence is scrutinized closely and any inferences to be drawn from it are viewed in a light most favorable to the party opposing the motion. *479 In addition, all allegations made by the opposing party are taken as true and any doubt arising between his allegations and the mover's is resolved in his favor. Self v. Walker Oldsmobile Co., Inc., 614 So.2d 1371 (La.App. 3rd Cir.1993). When reasonable minds cannot differ, the question of negligence is a question of law that may properly be resolved by summary judgment. Miller v. Coastal Corporation, 635 So.2d 607 (La. App. 3rd Cir.1994).
The trial court concluded that neither the tall grass on the levees and in the fields, nor the corner fence post, were a cause-in-fact of the collision, and accordingly dismissed all four defendants.
In determining whether liability exists under a duty-risk analysis, a plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, that defendant owed a duty to plaintiff which defendant breached and that the risk of harm was within the scope of protection afforded by the duty breached. Campbell v. La. Dept. of Transp. & Dev., 648 So.2d 898 (La.1995), (No. 94-C-1052 (La. January 17, 1995) After reviewing the evidence, we agree with the trial court that the claims against three of the defendants can be resolved by determining the cause-in-fact issue. We resolve the liability of the fourth defendant on the duty issue.
All of the parties agreed at the hearing that there was no genuine issue of fact as to the physical setting at the intersection and the vehicles after the collision. No further facts would come out at trial, since there were no eye-witnesses to the collision and the two survivors have no recollection of what occurred. Trooper Stutes investigated the accident and concluded that the collision occurred because Richard ran the stop sign. Stutes found no physical evidence that Richard tried to evade the collision before the point of impact and he concluded that, because Richard was traveling at a minimum speed of 32 mph when he collided with Hartman, he could not have stopped at the stop sign and accelerated to reach that speed before the point of impact. Stutes further testified that had Richard stopped at the intersection, he would have seen Hartman's vehicle since there were no physical obstructions to hamper his view of traffic along Road 9-18. The photographs taken of the intersection on Road 9-15 show that the intersection was clear, the stop sign was in no way obstructed by grass and could be clearly seen 300 feet back, and the shoulders of the road had been recently mowed. The tall grass was located fourteen and one-half feet back from the edge of Road 9-15 so it did not hamper Richard's view of the stop sign. The sole cause of this accident was the failure of Richard to obey the stop sign and come to a complete stop at the intersection. Had Richard stopped as required, this accident would not have occurred. It is pure speculation to say that Ms. Hartman, had she had a view unobstructed by rice fields or levees, from as far back as she could see, would or could have known the Richard truck was not going to obey the stop sign, and would or could have taken evasive action. We affirm the trial court's granting of the motion for summary judgment in favor of Foreman and Menard.
The police jury's conduct was likewise not the cause-in-fact of the accident. In Johnson v. American Southern Insurance Co., 569 So.2d 1071 (La.App. 3rd Cir.1990) there was overhanging brush in a curve on a parish maintained road when a head-on collision occurred. The plaintiff was in her lane of travel and the other vehicle was in the plaintiff's lane of travel in the curve. The plaintiff maintained that had she been able to see around the curve she could have avoided the accident. This circuit affirmed a judgment finding that the police jury was not liable. We found that the only cause-in-fact of the accident was the action of the other driver in crossing the center line and colliding head-on with the plaintiff. In Holt v. Rapides Parish Police Jury, 574 So.2d 525 (La.App. 3rd Cir. 1991) both drivers were in the middle of the road and collided at a 90° turn. There was vision-obscuring foliage six to ten feet tall lining the inside of the curve. A jury found the parish 20% at fault. This court, finding manifest error, reversed, finding that the cause-in-fact of the accident was both drivers' equal failure to keep their vehicles in their respective lanes of travel while negotiating *480 the blind curve, and that the fault of the police jury was not a cause-in-fact of the accident.
In our present case, the summary judgment evidence clearly shows that there was no vision-obscuring grass or vegetation within the parish's right-of-way at all, nor was there any vision obscurement between the stop sign and the driver of the pick-up truck. The known and knowable facts in this case lead unalterably to the conclusion that the cause-in-fact of the accident was solely the fault of the driver of the pick-up truck.
The presence of the Abshires' corner fence post on their property in the northwest quadrant of the intersection may have been a cause-in-fact of the damages. It is alleged that Mrs. Hartman died from the force of the impact when their car slammed into the post. There is a genuine issue of material fact about that. To recover against the Abshires, the Hartmans would have to prove that the Abshires owed them a duty not to leave the fence post where it was, and that the risk of harm was within the scope of protection afforded by the duty. The fence post was entirely on the Abshires' property. While this particular corner post may have been a little larger than the usual country fence post, it was nevertheless an ordinary fence post on the property line of an ordinary farm out in the country. We have been cited no state, local or other rule of law applicable to this case regulating the right of a farm owner to establish fence or corner posts on his property adjacent to a public road. There is nothing about such fence posts that present an unreasonable risk of harm to motorists who are forced to leave the travel portion of the road and be injured by striking them. In Nicks v. Teche Electric Co-op., Inc., 640 So.2d 723 (La.App. 3d Cir.), writ denied 644 So.2d 640 (La.1994) a utility company was held liable for leaving a 50-foot long utility pole lying unmarked in the grass in the right of way ten feet from the edge of a public highway, and a vehicle, forced from the highway by another car, ran into the pole because it did not have a clear recovery area. We affirmed a judgment against the utility company, because it violated state and federal guidelines when it failed to place the pole 30 feet or more from the traveled portion of the highway so as to provide a recovery area for the driving public. The facts of our present case are thoroughly distinguishable from the facts of Nicks. The Abshires owed no duty to the plaintiffs because their property did not present an unreasonably dangerous condition.
For the reasons assigned, we affirm the judgment of the trial court. Appellants will pay costs of this appeal.
AFFIRMED.
THIBODEAUX, J., dissents with reasons.
THIBODEAUX, Judge, dissenting.
Under the standard duty/risk analysis, all parties generally have the duty to exercise reasonable care under the circumstances. There is a duty to protect whenever the risk to another party is sufficiently foreseeable that a person of ordinary prudence would exercise care to avoid that risk. Specifically, the land owners, Winston Foreman and the Estate of Sidney Abshire, and the tenant farmer, Ravis Menard, owed a duty to the plaintiffs to discover any unreasonably dangerous condition and to either correct the condition or warn of its existence. See Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Shelton v. Aetna Casualty and Surety Company, 334 So.2d 406 (La.1976). A reasonably dangerous condition consisted of allowing approximately 8 feet of weed to grow on top of the rice field levees. Although the Police Jury had recently mowed the grass along the rights of ways, it, too, in my view, had apparently undertaken a responsibility to cut the weeds on that private property. Although there was evidence that Richard's view of Hartman's vehicle would not be inhibited by any obstructions on the parish rights of ways, the Police Jury had recently mowed the grass in that area and presumably had observed the tall weeds growing on the levees of the rice field which was in the southeast quadrant of the intersection.
Similarly, the owner of the property on which the large fence post sat had a duty to remove that fence post which had been constructed in 1941 to prevent cattle from roaming *481 into the country roads. It had absolutely no present utility.
Having set forth the defendants' duties and the breach of that duty by failing to maintain the height of the weeds at an appropriate level and failing to remove a useless fence post, the next inquiry is the causal relationship between the defendants' negligent conduct and the injury suffered. This is the "but for" question which should be resolved by the jury. Did the failure to cut the grass and remove the fence post create unreasonable risks of harm? In my view, these were substantial factors in causing the death of the decedents. See Socorro v. City of New Orleans, 579 So.2d at 939. Stated somewhat differently, but for the presence of the weeds and the fence post and the defendants' failure to undertake appropriate remedial measures, would Ms. Hartman and her daughter have been killed? See Roberts v. Benoit, 605 So.2d 1032 (La.1991).
Did these defendants breach a legal duty imposed to protect against the particular risk involved? Did the defendants' duties extend to protect the Hartmans from the injuries which they received in this particular accident? In other words, what is the risk of injury arising from the presence of tall weeds and a large fence post near a rural intersection? Is the risk of the injury such as those received by the Hartmans in the scope of protection of a rule of law which prohibits allowing tall weeds at such an intersection? Could the defendants have reasonably anticipated such a tragedy would occur? In my view, they could.
All of the defendants argue that cause-in-fact of the accident was the failure of Stoney Richard to obey the stop sign. However, that failure does not relieve the other party defendants from correcting the unreasonably dangerous conditions at that intersection which led to the cause-in-fact of the harm to the Hartmans. The record is pretty clear that neither vehicle undertook evasive actions to avoid the accident. But for tall weeds obscuring the vision and judgment of the Hartman vehicle, it may have been able to take evasive action which would have prevented the deaths of Ms. Hartman and her daughter. This may be speculative but, on a motion for summary judgment, a litigant's chances at winning on the merits are not considered. That is for the trier of fact to decide. Also, had it not been for the presence of that completely useless large fence post on the property of the Abshires in the northwest quadrant, the injuries may not have been so devastating, especially considering the relatively moderate estimated speed of the vehicles. See, for e.g., Campbell v. Louisiana Department of Transportation and Development consolidated with Fraser v. Louisiana Department of Transportation and Development, No. 94-C-1052, 648 So.2d 898 (La. January 17, 1995).
For the foregoing reasons, I respectfully dissent. I would reverse and remand for a trial on the merits on all defendants.