679 So.2d 134 (1996)
Stafford MILLER, et ux., Plaintiffs-Appellees,
v.
STATE of Louisiana, DOTD, Defendant-Appellant.
No. 95-548.
Court of Appeal of Louisiana, Third Circuit.
March 20, 1996.
Rehearing Denied May 30, 1996.
Writ Denied October 11, 1996.
*136 Edward P. Chevallier Jr., Many, Steven D. Crews, Natchitoches, for Stafford Miller et ux.
Mark Alan Perkins, Shreveport, for State of Louisiana DOTD.
William Daniel Dyess, New Orleans, for Audrey Collier.
Before KNOLL, THIBODEAUX, COOKS and WOODARD, JJ., and KNIGHT[*], J. Pro Tem.
WOODARD, Judge.
Stafford Ray Miller and Nancy Carol Miller filed a wrongful death suit against the State of Louisiana, through the Department of Transportation and Development (DOTD), to recover damages, resulting from the death of their 17-year-old-son, Stafford Allen Miller, in an automobile accident on Louisiana Highway 476 in Sabine Parish. DOTD appeals the judgment of the trial court which found DOTD liable for Allen's death and awarded $400,000.00 in general damages to each parent, with an apportionment of 25% fault to Allen.
We find that the trial court manifestly erred and reverse.

FACTS
In the early morning hours of December 15, 1990, Allen was driving his pickup truck toward his home in Negreet, Louisiana, on Highway 476, a paved, rural highway, lined with trees and fences. As Allen approached a slight curve to his right, he did not heed the posted sign warning motorists of the curve. Instead, he crossed the double yellow lines, crossed the opposite lane of travel and went straight into a field of trees.
There were no witnesses to the accident, but the evidence indicates that he took no evasive action, nor did he attempt to regain control of his vehicle, which eventually hit a tree whose elbow-shaped branch protruded approximately 11 inches to the down slope of the far side of the ditch off the shoulder on the opposite side of the road from his lane of travel.
Upon his arrival to investigate the accident, State Trooper James Napier discovered that Allen was dead. He had died instantaneously because of a broken neck which severed his spine. Trooper Napier estimated that Allen's pickup truck had traveled approximately 117 feet after striking the tree. Photographs of Allen's truck show that it was damaged on the left front and driver's side door. There was also severe damage to the upper A-frame of the truck's roof line, on the driver's side, which had impacted with the lower portion of the tree's elbow bulge. The officer found empty beer cans, still having condensation on them, in the truck and smelled alcohol on the decedent's breath.
At trial, the Millers stipulated that there was no defect in the roadway causing Allen to leave it. They also did not dispute the autopsy reports which showed that, at the time of his death, Allen had a blood alcohol level of .08%.

*137 LIABILITY OF DOTD
A plaintiff may proceed against DOTD under theories of negligence or strict liability. A strict liability claim against DOTD is governed by La.R.S. 9:2800, which limits the strict liability of public entities by requiring proof of the entity's actual or constructive knowledge of the defect which caused the damage. Proof of scienter is the only factor which distinguishes proof of negligence from proof of strict liability. See Fontenot v. Fontenot, 93-2479 (La.4/11/94), 635 So.2d 219. Thus, the burden of proof is the same under either theory when DOTD is the defendant. Essentially, to prove DOTD liable, plaintiffs must show that:
(1) the property that caused the damage was in the custody of DOTD;
(2) the property was defective because it had a condition that created an unreasonable risk of harm;
(3) DOTD had actual or constructive knowledge of the risk; and
(4) the defect in the property was a cause-in-fact of the plaintiff's injuries.
Bessard v. State, Dept. of Transp. and Development, 94-0589, p. 3 (La.11/30/94), 645 So.2d 1134, 1136.
In the case sub judice, we find that the trial court was correct in its determination that plaintiffs met their burden of proving part of the first requirement of this analysis; namely, that DOTD had custody and control of the tree because it was within the right-of-way. We find, however, that the court manifestly erred in its assessments of the remainder of the first requirement, as well as numbers (2) and (4) above: that the right-of-way was defective because it had a condition which created an unreasonable risk of harm and that the defect, had there been one, was a substantial factor in causing plaintiffs' injuries. Number (3), regarding notice, is rendered moot.
Plaintiffs have the burden of proving all of the above factors. Thus, unfortunately, from their viewpoint, if they fail to prove any one of them, they cannot succeed against DOTD. We find that they have neither established that the tree was a defect or created a defective condition, in that it imposed an unreasonable risk of harm, nor, had there been a defect, that it was a substantial factor in bringing about Allen's harm.

UNREASONABLE RISK OF HARM
Plaintiffs maintain that the tree Allen hit constituted a defect in that it created an unreasonable risk of harm because of its shape and proximity to the road since part of it was within the right-of-way, and the elbow section inflicted the fatal blow by crushing the A-frame, breaking his neck which severed his spine. They urge that the tree was in a "clear recovery zone;" that, consequently, DOTD had a duty to maintain that area as such, presumably, by removing the tree. Their speculation is that had DOTD done so, Allen would not have suffered the injuries he did and would be here today.
DOTD owes a duty to maintain the area off the shoulder of the road, but within the right-of-way, in such a condition that it does not present an unreasonable risk of harm. Oster v. Dept. Of Transp. & Development, 582 So.2d 1285 (La.1991). Whether the defect presents an unreasonable risk must be decided on the particular facts and circumstances of each case. Hunter v. Dept. of Transp. and Dev., 620 So.2d 1149 (La. 1993). Therefore, under the facts of this case, we must ask: was the risk that a speeding and intoxicated motorist, driving an A-frame vehicle of this size and design, might lose control of his vehicle, travel across the opposite lane of travel, then traverse the shoulder and ditch beyond, and strike this tree at the precise angle it did, within the ambit of duty that DOTD owes motorists?
Additionally, when determining whether a condition or defect presented an unreasonable risk of harm, courts balance several factors, including the probability and gravity of the harm presented by the risk against the social utility of the thing involved, the cost to the defendant of avoiding the risk, and the social utility of the plaintiff's conduct at the time of the accident. Nicks v. Teche Elec. Co-op. Inc., 93-1418 (La.App. 3 Cir. 6/1/94), 640 So.2d 723, writ denied, 94-1710 (La.10/7/94), 644 So.2d 640.
The tree in question was part of a vast wooded area. The evidence reveals that *138 there is no reason to believe that the risk of harm this tree posed to this driver was in any way different from that presented by the trees around it. Plaintiffs' own expert, Mr. Moody, testified that "[i]f that tree hadn't been there, and he'd gone off that curve, then there are other trees that he could've hit," some further away, and been killed at his calculated speed. This tree had been there for approximately thirty years, and Allen had driven that road many times, and made that curve, all without incident. Thus, plaintiffs' postulate that this tree, with its odd shape and unique position, posed an unreasonable risk of harm, and without it Allen would be alive today, is pure speculation. Moreover, given the "lay of the land," it is a most unlikely scenario.
Furthermore, the record does not substantiate that, indeed, DOTD intended that area to be a "recovery zone," nor that it had any obligation to create and maintain one. In fact, DOTD did not design the highway. We also note that "recovery zones" are intended to aid those drivers, traveling adjacent to them who slightly veer off the road, to return safely onto their own lane of travel. Id. Plaintiffs' position implies that had such a zone existed, it would have allowed this driver to regain control of his vehicle and return to the road. However, there is no evidentiary basis for this. It is simply academic, especially in light of plaintiffs' expert's speculation that Allen had fallen asleep at the wheel. Even if DOTD had an obligation to maintain such a recovery zone, and did so, likely, it would have served no purpose to this driver who never took evasive action nor attempted to regain control of his vehicle.
Holmes v. State, through Dept. of Highways, 466 So.2d 811, 821 (La.App. 3 Cir.), writ denied, 472 So.2d 31 (La.1985), speaks directly to this situation: "[t]he Highway Department's duty to maintain a safe shoulder does not encompass the foreseeable risk of injury to a motorist who strays completely off the traveled portion of the highway because his driving ability is impaired by reason of intoxication...." (Emphasis added). In another case similar to the present one, the court found that a utility pole located near the highway did not create an unreasonable risk of harm such that the state was liable for resulting injuries, where evidence indicated that the driver lost control of the auto and was intoxicated at the time of the accident. Beecher v. Keel, 94-314 (La.App. 4 Cir. 9/29/94), 645 So.2d 666; writ denied, 95-0108 (La.3/10/95), 650 So.2d 1185.
As to the area off the shoulder of the road, but within the right-of-way, DOTD owes a duty to maintain that area in such a condition that it does not present an unreasonable risk of harm to motorists or others using the roadway in a reasonably prudent manner. Oster, 582 So.2d 1285. The logic of the holdings in Holmes, Beecher and Oster would apply with even greater force to the more removed area where Allen had his accident.
Further, "a thing is defective for purposes of strict liability if it is unreasonably dangerous, meaning that it is dangerous to an extent beyond that which would be contemplated to an ordinary person." Ortego v. Jefferson Davis Parish School, 95-13, p. 2 (La.App. 3 Cir. 5/31/95), 657 So.2d 378, 380, writ denied, 95-1669 (La.10/6/95), 661 So.2d 475, citing Simeon v. Doe, 618 So.2d 848 (La.1993). "Not every imperfection or irregularity will give rise to liability, but only a condition that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances." Id. (Emphasis added). "The existence of an unreasonable risk of harm may not be inferred solely from the fact that an accident occurred." Id. The fact that a condition produces injury, and therefore may have presented danger, does not mean that that condition was unreasonably dangerous. DeLaughter v. West Jefferson Levee Dist., 94-0064 (La.App. 4 Cir. 11/30/94), 646 So.2d 506, writ denied, 94-3170 (La.2/9/95), 649 So.2d 428.
Therefore, having balanced "the probability and gravity of the harm presented by the risk against the social utility of the thing involved, the cost to the defendant of avoiding the risk, and the social utility of the plaintiff's conduct at the time of the accident" (Nicks, 640 So.2d at 728), we must conclude that the result of such consideration preponderates *139 in favor of the defendant, for the reasons previously enunciated.

CAUSATION
Not only was there no defective condition, the record shows that the cause of Allen's injuries was not DOTD's failure to remove the tree but rather his own negligence in failing to act as a reasonable and prudent person in the operation of his vehicle. An individual driver owes a duty to operate his vehicle in a prudent manner, which includes the duty to maintain control of it and to remain within his lane of travel. Williams v. City of Monroe, 27,065, 27,066 (La.App. 2 Cir. 7/3/95), 658 So.2d 820, writ denied, 95-1998 (La. 12/15/95), 664 So.2d 451; Delphen v. Dept. of Transp. & Dev., 94-1261 (La.App. 4 Cir. 5/24/95), 657 So.2d 328.
To be the cause-in-fact of an injury, a defect must be a substantial factor in bringing about the harm. U.S. F. & G. v. Hi-Tower Concrete Pumping, 574 So.2d 424 (La.App.2d Cir.), writ denied, 578 So.2d 136, 137 (La.1991). Nothing that DOTD did, or did not do, caused Allen to leave the roadway. There was nothing about the road or its shoulder or right-of-way on his lane of travel that contributed to his leaving the roadway or to the accident. There was no defectno gravel, potholes, drop offs, or slick substance on or near the road. It had not been raining. The road was dry. No one else was involved in the accident. According to the pathologist, Allen was an impaired driver, due to his intoxication, and that was the causative factor of this accident and resulting injuries. In addition to drinking to the point of intoxication, Allen chose to speed, which further compounded his inability to maintain control of his vehicle.
Again, the record does not support that had this tree not been there, or had this tree not had the shape it had, Allen would still be alive. It is only speculation. In a case similar to this one, the court held that it was pure speculation that the driver of a vehicle could or would have taken evasive action in avoiding the collision had her view been unobstructed by rice fields or levees; thus, the rice fields and levees were not a cause-in-fact of the collision. Accordingly, the plaintiff had not proved cause-in-fact. Hartman v. Vermilion Parish Police Jury, 94-893 (La. App. 3 Cir. 3/1/95), 651 So.2d 476, writ denied, 95-0778 (La.5/5/95), 654 So.2d 326. In fact, in the present case, one could just as easily speculate that with Allen plowing into this field of trees, taking no evasive action, if not for this tree, he would have careened into one or more of the other trees and suffered fatal injuries. Therefore, the tree in the case sub judice did not cause Allen's fatal injury.
Finally, under the facts of this case, we cannot even cloak Allen with the status of "unwary driver" and hold him to a lesser standard, as in Forest v. State, Through Louisiana D. of Transp., 493 So.2d 563 (La. 1986), which held that DOTD owed a legal duty to alert unwary drivers to unusually perilous hazards. First of all, Allen was not confronted by an unusually perilous hazard. Second, Allen was markedly familiar with that curve and its surroundings. He had traveled it many times. Third, nothing obstructed his view of the roadway or tree, and a curve warning sign was posted. Thus, Forest does not pertain.
We recognize that this family's loss is great. Their sorrow is understandably deep. We do not wish to detract from that, but it is far more likely, rather than a breach of a legal duty owed, that the decedent fortuitously hit this particular tree at a particular angle at a particular speed and sustained mortal injuries. It could very well have been another tree, and the results would have been the same. We find that this tree was neither defective nor was it what caused the decedent to become injured; it did not pose an unreasonable risk of harm, nor was it a substantial factor without which the accident would not have happened. Thus, this particular risk does not fall within the ambit of DOTD's legal duty. Accordingly, we find that the trial court committed manifest error in finding DOTD liable under these circumstances.

OTHER ASSIGNMENTS OF ERROR
Although appellants and appellee set forth other assignments of error regarding liability, quantum and contributory negligence, our previous determinations render these issues moot. Adams v. Caddo Parish School Bd., *140 25,370 (La.App. 2 Cir. 1/19/94), 631 So.2d 70, writ denied, 94-0684 (La.4/29/94), 637 So.2d 466.

CONCLUSION
For the above reasons, the judgment of the trial court is reversed. Costs of this appeal are to be taxed to the plaintiffs-appellees, Stafford Miller and Nancy Miller.
REVERSED.
THIBODEAUX, J., dissents and assigns written reasons.
COOKS, J., dissents for the reasons assigned by THIBODEAUX, J.
THIBODEAUX, Judge, dissenting.
First of all, the majority uses the incorrect standard of review in deciding this case. The majority concludes that the trial court was manifestly erroneous in finding that the tree had a condition which created an unreasonable risk of harm. Whether an unreasonable risk of harm exists is a question of law and is not subject to analysis under the manifest error rule. Green v. City of Thibodaux, 94-1000 (La.App. 1 Cir. 10/6/95), 671 So.2d 399. The trial court should be given deference with respect to the findings of fact which would support the ultimate conclusion that an unreasonable risk of harm was created. However, once the appropriate deference is extended and manifest error does not exist, then the application of those facts to determine an unreasonable risk of harm is a matter of law.
Even if a manifest error standard of review is utilized, the majority is incorrect. It disregards the evidence in this case to reach a desired result, I suspect, because the actions of the young man in causing the accident. A full and thorough review of the record convinces me that the majority is clearly wrong in its assessment of the evidence.
Several witnesses testified about the location and configuration of the tree on Highway 476. Robert Gunter, the district maintenance engineer for the DOTD, testified that in one of the photographs submitted by the Millers, the stump of the tree sticks out in the roadway more than the other trees along Highway 476. Ralph Matthews, a DOTD employee for 30 years who was part of the mowing crew along Highway 476 in the Negreet area, admitted that the tree is located on the back slope of the ditch at the apex of the curve. Matthews also testified that he knows of no other trees along Highway 476 that are similarly shaped. William Eason, the parish maintenance superintendent for the DOTD whose duties included riding the roadways to look for hazards and scheduling maintenance work, noted in his post-accident report that the two-forked pine tree was located at the back slope of the ditch. Eason further noted that the protruding elbow of the tree appeared to be located directly over the ditch.
The DOTD employees also testified as to the ease of cutting down a tree which they felt presented a hazardous condition. Gunter testified that tree and brush cutting are part of regular DOTD maintenance and that it is desirable to have a uniform tree line along a roadway. Matthews testified that the duties of the mowing crew including cutting off tree limbs that hung over the roadway; that they had available the equipment to cut down a tree and haul it away; that the DOTD attempted to keep all of the trees lined up evenly along the road; and, if it was determined that a big tree on the back slope was hazardous, the DOTD had the ability to cut the tree.
The Millers also presented the testimony of Gene Moody, an accident reconstruction expert. Mr. Moody testified that the edge of the tree at the foot of the ditch was located approximately eight feet, seven inches off of the asphalted portion of the roadway. Mr. Moody further testified that the elbow of the tree was located at approximately six feet from the roadway and protruded from the tree about eleven inches over the ditch and therefore was not flush with the rest of the tree. The DOTD's accident reconstruction and highway design expert, Dr. Ned Walton, agreed that the tree sits in the back slope of the ditch and that a large tree located too close to the roadway is a hazard. Dr. Walton also agreed that in a sideswipe type of impact, it is better to strike a straight tree as *141 opposed to a forked tree like the tree involved in the present case. Dr. Walton further testified that obstructions in the highway's clear zone should be removed and a ditch in the clear zone should be made traversable.
Based on the above testimony and the photographs of the tree, its elbow and the damage sustained by the tree as a result of the truck's impact as well as the photographs of the remaining tree stump after the tree was cut down subsequent to the accident, the trial court found that the configuration of the tree and its location in the ditch near the roadway made the tree unreasonably dangerous. The tree in question was large and had an unusual shape. The tree was also out of line with the other trees in the area. The elbow of the tree protruded over the roadway ditch and was close to the ground. Under these circumstances the likelihood of harm was great, especially in light of the fact that there is no road shoulder running parallel to Highway 476, giving an inadvertent driver the opportunity to correct a wrongful maneuver.
Given all of the above facts, the tree which was in the custody of the DOTD presented an unreasonable risk of harm.
The DOTD contends that the Millers failed to prove that it had actual or constructive notice of the dangerous condition of the tree involved in the accident before the accident, and that it failed to take corrective action within a reasonable time.
The trial court found that the DOTD had constructive notice of the condition with reasonable opportunity to repair. It noted the testimony of DOTD employees that Highway 476 has been maintained by the DOTD for over thirty years. The court also noted that DOTD's work records indicate many occasions where work was conducted in the area. The court also found important the employees' testimony that, although they did not think the tree presented a risk of harm, they did notice the tree over the years. The DOTD argues that its notice of the tree was not notice of the tree's hazardous condition.
At first glance, it appears that the trial court equates notice of the tree with notice of the hazardous condition the tree presented. However, upon careful inspection of the record, it is clear that the DOTD had notice of not only the tree, but also of the tree's dangerous condition. As noted by the trial court in its written reasons for judgment, the ditch mowers had to go around the tree to grade the ditches. The state trooper experienced difficulty when passing by the tree with wide loads. The DOTD desires a uniform tree line along its roadways and in fact made attempts to keep all of the trees evenly lined along the roadway. The photographs reveal that the tree in question was out of line with the other trees in its vicinity. The elbow of the tree protruded directly over the ditch and hung close to the ground. Cutting trees and brush are part of the DOTD's regular maintenance. Other maintenance work was conducted along Highway 476 which included cutting trees, but this tree was not recognized as presenting a hazardous condition. The DOTD knew about the elbow in the tree, knew of its position over the ditch and the maintenance records reveal that it had a reasonable opportunity to cut the elbow off of the tree and failed to do so. Hence, the DOTD had a duty to Allen, which it breached, to cut the elbow off of the tree, and the risk that Allen would be inattentive driving the curve and colliding with the elbow of the tree in the ditch was within the scope of the protection afforded by the duty which the DOTD breached.
The trial court was not manifestly erroneous in its finding that the DOTD had notice of the tree's dangerous condition and failed to correct the condition although it had ample time to do so.
Lastly, the DOTD argues that it is not liable because the Millers failed to prove that any defective condition in the tree was the cause of the accident. Causation is an issue of fact; thus, it is subject to analysis under the manifest error/clearly wrong standard. Stobart v. State, DOTD, 617 So.2d 880 (La. 1993). An act or omission is a cause-in-fact of harm to another if it was a substantial factor in bringing about the harm. Socorro v. City of New Orleans, 579 So.2d 931 (La. 1991). Dr. George McCormick, II, a forensic pathologist, testified that Allen died because *142 he broke his neck and severed his spinal cord. Allen's most extensive injury appeared to the left side of his head. When told that the A-frame of Allen's truck was caved in on the left side, Dr. McCormick concluded that Allen hit his head on the truck's post which caused his neck to break but that Allen was unconscious from the time that he hit his head. The trial judge further relied on the testimony of plaintiff's expert, Mr. Moody, who testified that upon impact with the elbow of the tree, the truck's A-frame was collapsed on top of Allen's head. The state trooper's testimony supports the conclusions reached by Mr. Moody. The photographs of the tree show that the elbow of the tree was the height of the truck's cab. There is no manifest error in the trial court's decision to support his judgment with the testimony of the Millers' expert, Mr. Moody, over that of the expert testifying for the DOTD.
The DOTD presents an argument similar to its argument in Campbell v. DOTD, 94-1052 (La.1/17/95), 648 So.2d 898, i.e., that the dangerous condition did not cause the motorist to lose control of his vehicle and thus was not a cause-in-fact of the accident. In Campbell, it was the lack of guardrails on a bridge; in the present case, it is the elbow of a tree which was extended over the ditch maintained by the DOTD. However, the Campbell court held that the failure of Allen to maintain control of his vehicle does not relieve the DOTD of its duty to keep the highways safe. Campbell, 648 So.2d at 902. This case involved one unfortunate eventa collision of a vehicle with an odd-shaped tree. The negligence of Allen in falling asleep at the wheel and losing control of his truck as well as the failure of the DOTD to cut off the elbow of the tree that was truck cab height and extended over the ditch, combined to cause harm to Allen, plainly and simply.
The majority studiously avoids any discussion of Campbell. In fact, it fails to even mention Campbell or a recent decision by our circuit, Boutte v. Nissan Motor Corporation, 94-1470 (La.App. 3 Cir. 9/13/95), 663 So.2d 154. The majority focuses on cause-in-fact of the accident, not cause-in-fact of the harm. For instance, it notes that:
Nothing that DOTD did, or did not do, caused Allen to leave the roadway. There was nothing about the road or its shoulder or right-of-way on his lane of travel that contributed to his leaving the roadway or to the accident. There was no defectno gravel, potholes, drop offs, or slick substance on or near the road. It had not been raining. The road was dry. No one else was involved in the accident. According to the pathologist, Allen was an impaired driver, due to his intoxication, and that was the causative factor of this accident and resulting injuries. In addition to drinking to the point of intoxication, Allen chose to speed, which further compounded his ability to maintain control of his vehicle. (Emphasis in original of majority's opinion).
The majority places, it seems, emphasis on Allen having fallen asleep and running into the tree on the opposite side of the highway. In Campbell, the driver also fell asleep at the wheel, lost control, and also veered across the highway where he struck a concrete abutment on a bridge which did not have a guardrail. As I mentioned before, similar arguments as those made by the majority were made and rejected in Campbell. The failure of Allen to avoid falling asleep, to avoid traversing the highway, and to maintain control of his vehicle does not relieve DOTD of its duty to keep the highways safe for vehicular travel. Allen does share some blame in causing the accident. However, that does not relieve the DOTD of liability for the harm occasioned by the defective condition which existed.
The plaintiffs' proof was neither speculative nor academic. The trial judge was not manifestly erroneous in gauging the evidence which supported the legal conclusion of the existence of a dangerous condition which was a cause-in-fact of the harm to Allen.
I would affirm the trial court's decision in all respects.
For the foregoing reasons, I respectfully dissent.
NOTES
[*] Judge William N. Knight of the Thirty-First Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.