648 So.2d 898 (1995)
Robert CAMPBELL
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION & DEVELOPMENT et al.
Eugene FRAZIER, Sr. et ux
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION & DEVELOPMENT et al.
No. 94-C-1052.
Supreme Court of Louisiana.
January 17, 1995.
*899 Steven D. Crews, Watson, Murchison, Crews, Arthur & Corkern, Natchitoches, Edward P. Chevallier, Jr., Berkett & Chevallier, Many, and Daniel T. Murchison, Jr., Natchitoches, for applicant.
Ted D. Hernandez, Natchitoches and Richard P. Ieyoub, Atty. Gen., for respondent.
MARCUS, Justice.[*]
Eugene Frazier, Sr. and Grace Frazier filed a wrongful death suit against Richard D. Ledford, his liability insurer, and the state of Louisiana through the Department of Transportation and Development (DOTD), to recover damages resulting from the death of their son, Robert Lane Frazier, in an automobile accident on La. Highway 6. Robert Campbell also filed a suit against the same defendants to recover damages for his personal injuries resulting from the same automobile accident.
In the early morning hours of January 22, 1989, Ledford was driving west along La. Highway 6 from Natchitoches to Many, Louisiana, returning home from a party in Natchitoches. Frazier and Campbell were guest passengers in the vehicle. Frazier was asleep in the front passenger seat and Campbell was asleep in the back seat. Ledford was on a weekend leave from the Navy and had been visiting his parents who lived in Many. Between 4:30 and 5:00 a.m., Ledford fell asleep while he was operating his vehicle. The vehicle went off onto the right shoulder as it approached the curve of Crib Creek Bridge. Ledford awakened and turned the vehicle to the left to try to get back on the highway from the shoulder before he entered the bridge. In doing so, the right front tire caught the shoulder causing the vehicle to veer across to the left traffic lane. Ledford could not gain control of the vehicle before the front right passenger side of the vehicle *900 struck the concrete abutment of Crib Creek Bridge resulting in the death of Frazier and injuries to Campbell and Ledford. Crib Creek Bridge did not have guardrails. It is undisputed that Ledford was not intoxicated at the time of the accident.
The two lawsuits were consolidated for purposes of trial. Prior to trial, plaintiffs settled with Ledford and his insurer and dismissed them from the lawsuits. After trial on the merits, the trial judge found Richard Ledford (the driver) 25% at fault and DOTD 75% at fault in causing the death of Frazier and the injuries to Campbell. The trial judge rendered judgment in favor of Eugene Frazier, Sr. and Grace Frazier against DOTD for $112,500 each and in favor of Robert Campbell and against DOTD for $65,101.83[1] DOTD appealed. The court of appeal, with one judge dissenting, amended the judgment to reduce the liability of DOTD from 75% to 10%.[2] Upon plaintiffs' application, we granted certiorari to review the correctness of that decision.[3]
The issue presented for our consideration is whether the court of appeal erred in reducing the percentage of fault of DOTD in causing the accident and injuries from 75% to 10%. Plaintiffs contend that the trial judge correctly assessed the fault between the parties in that DOTD's failure to place guardrails to prevent collision with the abutment of Crib Creek Bridge was a more substantial factor in bringing about the harm than Ledford's negligence in operating his vehicle.
The parties stipulated to the following facts. La. Highway 6 had been under the supervision and control of DOTD since its construction in the mid or late 1960's. There are fifteen bridges on La. Highway 6 between Natchitoches, Louisiana, and the Louisiana/Texas state line. All of the bridges, with the exception of the Crib Creek Bridge where this accident occurred, currently have guardrails. All of the guardrails placed on the bridges on La. Highway 6 between Natchitoches and the Louisiana/Texas state line were placed on the bridges during overlay work performed on the highway.
At trial, William Hickey, a road design engineer with DOTD, testified that an unexposed concrete bridge abutment presented a danger to motorists. He further testified that the purpose of a guardrail is to prevent a vehicle from impacting into the end of a bridge. In the mid 1960's Louisiana first began placing guardrails on new highway construction in accordance with AASHTO specifications.[4] Since February of 1974, DOTD has been adding guardrails to existing bridges during highway reconstruction or overlay projects in accordance with standard plan GR-54. In 1980, DOTD began an overlay project on La. Highway 6. The first phase was from Many to the Fort Jessup Highway in Sabine Parish, Louisiana. This section of the highway included three bridges, and guardrails were placed on each of these bridges during the overlay project. The second phase in 1981 extended from the Fort Jessup Highway to the Natchitoches Parish/Sabine Parish state line. The only bridge in this section of the highway was Crib Creek Bridge. Guardrails were not added to Crib Creek Bridge during the overlay project. Hickey estimated the cost to place guardrails on Crib Creek Bridge during the project to be about $15,000 and further testified that funding would not have been a problem.[5] No recommendation was *901 made at that time to place guardrails on Crib Creek Bridge even though the general policy of DOTD at the time shown by documents admitted into evidence was that guardrails would be added to existing bridges that met certain criteria during overlay work and Crib Creek Bridge met the criteria. Hickey's only explanation of why DOTD policy was not followed on Crib Creek Bridge was that the bridge had aggregate rather than concrete shoulders. Plaintiffs introduced into evidence two inspection reports of Crib Creek Bridge, one in February of 1986 and the other in April of 1988. Both reports recommended that guardrails be placed on the bridge. At the time of the accident in January of 1989, there were no guardrails on Crib Creek Bridge.
Larry Tipton, an auto accident reconstruction expert called by plaintiffs, introduced into evidence a drawing depicting the accident as it occurred and another which was a reconstruction of the accident had guardrails been placed on the bridge. His findings were based on the information in the accident report as well as findings from crash test studies. He testified that had guardrails been placed on the bridge, the impact of the vehicle would have been reduced by 80% or more and the resulting injuries would have been significantly reduced. He further stated that the vehicle would have impacted with the guardrail and been redirected onto the highway. It was his opinion that the facts that Crib Creek Bridge is in a curve and the shoulders of the bridge are aggregate rather than concrete make the bridge more of a hazard than some other bridges he had viewed. Joseph David Blaschke, a highway design safety and accident reconstruction expert called by DOTD, was of the opinion that even if guardrails had been placed on Crib Creek Bridge, the accident would have been significant and the impact of Ledford's vehicle would have been severe, but perhaps less so. While not agreeing with Tipton's analysis, he admitted that if Tipton's analysis was correct, the force of the impact would have been substantially reduced and the injuries that resulted would have been different. He also admitted that guardrails are designed to make a highway safer in general to the public.
No one disputes that Ledford was negligent or that his negligence was a substantial cause of the accident. As a driver, Ledford had a duty, which he breached, to use reasonable care in the operation and control of his vehicle. This duty encompassed within its scope the risk that guest passengers might be injured in an accident. Therefore, Ledford is at fault in causing the accident. Molbert v. Toepfer, 550 So.2d 183, 184 (La.1989).
Next, we must determine whether DOTD was at fault. DOTD's liability may arise under a theory of negligence, La.Civ. Code art. 2315, or a theory of strict liability, La.Civ.Code art. 2317. The distinction between recovery under these theories is that under strict liability, the plaintiff is relieved of proving the owner or custodian of the thing which caused the damage knew or should have known of the risk involved. See Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 (La.1982). Nevertheless, La.R.S. 9:2800 as applied to government defendants requires a plaintiff to prove that the public entity has "actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so." Therefore, under either theory the analysis is the same.
In determining whether liability exists under a duty-risk analysis, a plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, that defendant owed a duty to plaintiff which defendant breached and that the risk of harm was within the scope of protection afforded by the duty breached. Mundy v. Dept. of Health and Human Resources, 620 So.2d 811 (La.1993). The duty of the state through DOTD is to keep the highways and its shoulders in a reasonably safe condition. Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170, 1172 (La.1986). This duty encompasses the obligation to protect a motorist who inadvertently drives onto the shoulder of the highway. Rue v. State, Dept. of Highways, 372 So.2d 1197, 1199 (La.1979). Whether DOTD breached its duty, that is, *902 whether the roadway at the scene of the accident was in an unreasonably dangerous condition, will depend on the facts and circumstances of each case. Hunter v. Dept. of Transp. and Dev., 620 So.2d 1149 (La.1993).
The evidence presented at trial showed that the lack of guardrails on Crib Creek Bridge created a hazardous and dangerous condition and that the purpose of guardrails on bridges is to prevent the type of collision and resulting injuries that occurred in this case. Plaintiffs' expert testified that if a guardrail had existed on Crib Creek Bridge, then Ledford's vehicle would have been redirected onto the highway. The guardrail would have protected the vehicle from a collision with the concrete bridge abutment. DOTD knew of the fact that Crib Creek Bridge did not have guardrails, had reasonable opportunity to remedy the condition and failed to do so. As early as 1974, DOTD policy was to place guardrails on existing bridges during construction or overlay work. During the overlay projects on La. Highway 6 between 1980 and 1982, guardrails were placed on three other bridges but not on Crib Creek Bridge despite the fact that Crib Creek Bridge met DOTD criteria for the placement of guardrails during overlay projects. Two inspection reports, one in 1986 and another in 1988, recommended that guardrails be placed on the bridge yet at the time of the accident in January of 1989, there were still no guardrails on Crib Creek Bridge. Hence, we find that DOTD had a duty to Ledford, which it breached, to place guardrails on Crib Creek Bridge, and the risk that Ledford would collide with the concrete bridge abutment was within the scope of the protection afforded by the duty that DOTD breached. Finally, we must determine whether DOTD'S breach of duty was a cause-in-fact of the resulting harm. DOTD argues that the lack of guardrails did not cause Ledford to lose control of his vehicle and thus was not a cause-in-fact of the accident. DOTD would have us look no further than the negligence of Ledford in causing the accident. However, the failure of Ledford to maintain control of the vehicle does not relieve DOTD of its duty to keep the highways safe. This case involved one unfortunate eventa collision of the vehicle with the bridge. The negligence of Ledford in losing control of his vehicle as well as the failure of DOTD to place guardrails on the bridge combined to cause the harm to the guest passengers in the vehicle. The fact that more than one party can contribute to the harm is the reason for our comparative fault system. Clearly, DOTD's conduct of failing to place guardrails on Crib Creek Bridge was a substantial factor in causing the injuries to Campbell and the death of Frazier. Therefore, DOTD is liable to plaintiffs for the damages sustained.
Having found both Ledford and DOTD at fault, we must allocate the percentages of fault to each under our comparative fault system. In apportioning fault the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985). The trial judge, finding that the "defect in the bridge resulted in the seriousness of the collision," held Ledford 25% at fault and DOTD 75% at fault. The court of appeal reapportioned fault, finding that "the degree of risk created by Ledford's conduct and his far superior capacity to avoid the accident requires that a much higher degree of blame be attributed to him in the causation of this accident." It reduced DOTD's fault to 10% and increased Ledford's fault to 90%.
We find that the court of appeal erred in reapportioning fault. If we analyze the fault of the parties in causing the harm to Campbell and Frazier, then it is clear that the greater degree of fault lies with DOTD. As we stated earlier, except to the extent that the driver's negligence set the accident in motion, the driver had no control over the resulting harm caused by the impact of the vehicle with the concrete bridge abutment. The evidence presented by experts on both sides was that the purpose of a guardrail is to prevent or at least reduce the injuries and subsequent damage by redirecting a vehicle back onto the highway and to prevent impact with the concrete bridge abutment. Tipton, plaintiffs' expert, presented a reconstruction *903 of how he believed the accident would have progressed had the guardrails been installed. According to his analysis, the force of the impact would have been reduced by 80% or more and the resulting injuries would have been significantly reduced. To put it another way, Ledford's negligence set the course for an accident to happen, but the harm or injuries to the guest passengers in Ledford's vehicle were a direct result of the impact with the concrete bridge abutment. We agree with the trial judge's finding that DOTD's fault is more substantial than the fault of Ledford in causing the harm sustained. Likewise, we find that the trial judge was not clearly wrong in her allocation of fault. The court of appeal erred in reducing the fault of DOTD to 10%. Therefore, we will reverse the judgment of the court of appeal and reinstate the judgment of the trial judge fixing the fault of Ledford at 25% and that of DOTD at 75%.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the judgment of the trial court is reinstated. All costs are assessed against DOTD.
WATSON, J., not on panel, Rule IV, Part 2, § 3.
NOTES
[*] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in place of Justice Pike Hall, Jr. Watson, J., not on panel. Rule IV, Part 2, § 3.
[1] The trial judge awarded damages in the amount of $150,000 to Grace Frazier and $150,000 to Eugene Frazier. She awarded Robert Campbell $75,000 in general damages and $11,802.45 in medicals for a total of $86,802.45. The trial judge reduced these awards by 25% since DOTD was 75% at fault. Plaintiffs had dismissed Ledford, the driver of the vehicle, from the litigation prior to trial.
[2] 93-628, 93-629 (La.App. 3d Cir. 3/23/94); 635 So.2d 1224.
[3] 94-1052 (La. 9/2/94); 642 So.2d 1273.
[4] AASHTO, the American Association of State Highway Transportation Officials, set forth specifications in 1961 which were amended in 1964 recommending that blunt bridge ends should be avoided and careful attention should be given to the treatment of railings at bridge ends.
[5] Although the estimated construction cost of the second phase of the project which included Crib Creek Bridge was $1,743,000, the actual cost was only about $751,000.