657 So.2d 270 (1995)
Richard BLACK, Plaintiff-Appellee,
v.
STATE of Louisiana, Through the DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, and the City of DeQuincy, Defendants-Appellants.
No. 94-1305.
Court of Appeal of Louisiana, Third Circuit.
May 17, 1995.
Writ Denied September 29, 1995.
*272 Joseph V. DiRosa Jr., New Orleans, for Richard Black.
Robert Wickliffe Fenet, Thomas Joseph Solari, Lake Charles, for State of LA, Through Dept. of Public Safety and Corrections.
Bradley Charles Myers, John F. Jakuback, Baton Rouge, for City of DeQuincy.
Before DOUCET, C.J., and LABORDE and KNOLL, JJ.
KNOLL, Judge.
This appeal concerns the liability of the State of Louisiana, through the Department of Public Safety and Corrections, and the City of DeQuincy, for injuries an inmate sustained while working for the City of DeQuincy.

FACTS
On January 12, 1989, Richard Black, then an inmate at the Louisiana Correctional and Industrial School (LCIS) in DeQuincy (hereafter the City), was one of approximately fifteen inmates assigned to a work detail for the City pursuant to its contract with the Department of Public Safety and Corrections.[1] Under the supervision of William "Sonny" Johnson, a City employee, the inmates were instructed to clear trees and other brush from a four foot area on either side of a fence surrounding a waste pond. Sonny Johnson assigned Black the task of cutting the trees down with a chain saw, while another inmate, Michael Fletcher, gathered the limbs into piles to be hauled away. During the course of this work, Black felled a large tree and cut it into smaller pieces for easier handling. As Fletcher flipped the stump of the tree into a ravine where the debris was being stacked, the stump slipped from his hands, landing on Black's right foot and severing his great toe at the joint.
Black was taken to DeQuincy Memorial Hospital, where his foot was cleaned and bandaged. He returned to the LCIS infirmary *273 and was transferred later that afternoon to Charity Hospital in New Orleans, where his severed toe was surgically reattached. The toe became gangrenous and Black's physicians conceded that the attempted reattachment had been unsuccessful. On February 22, 1989, Black's toe was partially amputated at the distal interphalangeal joint. Black was discharged from follow-up care on April 12, 1989. Dr. Thomas Ford, an orthopedist, estimated Black's "permanent/partial physical impairment to be 75 percent of the great toe," corresponding to a 14 percent impairment of the right foot as a whole, but stated that Black had no functional disability and was capable of full duty. Black testified at trial that he now has no problems getting around on his foot and can generally do the things he did before the accident occurred.

PROCEDURAL HISTORY
Black contended at trial that the State, through the Department of Public Safety and Corrections, and the City were liable for the negligence of inmate Michael Fletcher[2] under the doctrine of respondeat superior. He further argued that both entities were liable for negligently supervising the prison work crew and for failing to provide adequate safety equipment, including steel-toed work boots. And finally, he claimed that once his injury occurred, both entities were negligent in rendering medical treatment.
After a bench trial, the district court found that the negligence of Michael Fletcher was the sole cause of Black's injuries, and concluded that Fletcher was an employee of the City and the State under a respondeat superior analysis. The court also held that the supervision, safety equipment, and instructions given to the work crews were sufficient and not negligent. The court further held that the City and the State sought prompt medical attention for Black, and refused to find any negligence on the part of either entity with regard to Black's medical treatment. Finding the City and the State liable to the plaintiff in solido, the court awarded Black $35,000 in total damages, including pain and suffering, disability, and all medical expenses.[3] Pursuant to an indemnification clause in the contract between the City and the Department of Public Safety and Corrections, the court held that the City was responsible for indemnification of any sums paid by the State to the plaintiff.
From this judgment, the City appeals, raising three issues: (1) The trial court's finding that the City and the State were liable through the doctrine of respondeat superior for the negligent and/or intentional acts of Michael Fletcher was erroneous; (2) in the alternative, if respondeat superior liability applies to inmates, then the indemnity agreement between the City and the State should not make the City liable for the entirety of the judgment; and (3) the trial court was manifestly erroneous in its award of general damages to the plaintiff. The State has also appealed, raising the respondeat superior issue and, in the alternative, urging that the indemnification issue was correctly decided. The plaintiff has answered the appeal, seeking an increase in quantum and review of the supervision, safety equipment, and instruction issue.
For the reasons which follow, we set aside the judgment of the trial court. We find that the City was negligent in failing to provide adequate safety equipment to the inmates on the work detail, a duty which the City assumed by contract with the Department of Public Safety and Corrections. The City's negligence was the cause-in-fact of the harm to plaintiff under the analysis of Campbell v. Louisiana Department of Transportation and Development, 94-1052 (La. 1/17/95); 648 So.2d 898. We assess the fault of the City at 100 percent. We find no negligence on the part of inmate Michael Fletcher or the State; therefore, we pretermit discussion of whether the State can be held vicariously liable for the negligence of a prison inmate. Because we assess 100 percent of the fault to the City, we further pretermit discussion of the effect of the indemnity clause in the City's contract with the Department of Public Safety and Corrections. And finally, we *274 find no abuse of discretion in the $35,000 damage award made by the trial court.

NEGLIGENCE OF THE CITY OF DEQUINCY
On the day the accident occurred, LCIS provided the inmates on the work crew with a pair of rubber boots and a pair of low top leather work boots. Since the ground at the work site was wet and muddy from recent rain, Black and his fellow inmates wore the rubber boots. There was conflicting testimony at trial as to whether the inmates made this decision on their own or whether Sonny Johnson told the inmates which shoes to wear. Nevertheless, it is uncontroverted that the inmates were not provided steel-toed safety boots by either LCIS or the City.
The plaintiff called Dr. Andrew Egan, Ph.D. as an expert witness in logging safety. Dr. Egan testified that according to OSHA and American Pulpwood Association standards, the person operating the chain saw should have had, at "a bare minimum," a hard hat, chaps, eye and ear protection, and some sort of steel-toed or safety-toed work boots. He opined that the proper safety equipment would not have prevented the accident from occurring, but would have minimized the severity of plaintiff's injury.
The recent Supreme Court decision in Campbell v. Louisiana Department of Transportation and Development, supra, is particularly relevant to the present case. In Campbell, the driver of a car fell asleep at the wheel, veered onto the right shoulder of Highway 6, awakened and returned to the roadway, crossed both lanes of traffic, and then drove onto the left shoulder of the highway, where he struck the concrete abutment of the Crib Creek Bridge near Many, Louisiana. The collision killed the front seat passenger and seriously injured the back seat passenger. A wrongful death suit brought by the parents of the decedent named the Louisiana Department of Transportation and Development (DOTD) as a defendant; the plaintiffs contended that DOTD was liable for its failure to place guardrails on the bridge. The trial court found the driver to be 25 percent at fault for failing to maintain control of his vehicle and DOTD to be 75 percent at fault for failing to place guardrails on the bridge. DOTD appealed. The appellate court amended the judgment to reduce the liability of DOTD to 10 percent.[4] The Supreme Court, employing a duty-risk analysis, reinstated the judgment of the trial court and held that the driver's negligence set the stage for an accident to happen, but the death of the front seat passenger was a direct result of DOTD's failure to place guardrails on the bridge. The evidence showed that had guardrails been in place at the time of the accident, the force of the vehicle's impact would have been reduced by 80 percent or more, and the resulting injuries to the passengers would have been lessened significantly.
Under a duty-risk analysis, the plaintiff must prove that defendant owed a duty to the plaintiff, the requisite duty was breached by the defendant, the risk of harm was within the scope of protection afforded by the duty breached, and the conduct in question was a cause-in-fact of the resulting harm. Campbell, supra, at 5; 648 So.2d at 901 (citing Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La. 1993)).
In the case sub judice, the City assumed a duty to provide safety equipment, appropriate for the tasks being performed, to the inmates who were selected for the work detail. The provisions of the contract between the City and the Department of Public Safety and Corrections required, inter alia, that the City provide the necessary safety equipment to the inmate work crew, including "safety glasses or goggles, hard hats and safety shoes if not provided by [LCIS] " (emphasis added). Despite this clause, however, no safety equipment was provided by the City. Hence, we find that the City had a contractual duty, which it breached, to provide adequate safety equipment to the inmate work crew. The risk that an inmate would be injured while felling timber was within the scope of the protection afforded by the duty that the City breached.
*275 Finally, we must determine whether the City's breach of duty was a cause-in-fact of the resulting harm to plaintiff. As stated in Campbell:
"DOTD argues that the lack of guardrails did not cause [the driver] to lose control of his vehicle and thus was not a cause-in-fact of the accident. DOTD would have us look no further than the negligence of [the driver] in causing the accident. However, the failure of [the driver] to maintain control of the vehicle does not relieve DOTD of its duty to keep the highways safe. This case involved one unfortunate eventa collision of the vehicle with the bridge. The negligence of [the driver] in losing control of his vehicle as well as the failure of DOTD to place guardrails on the bridge combined to cause the harm to the guest passengers in the vehicle. The fact that more than one party can contribute to the harm is the reason for our comparative fault system. Clearly, DOTD's conduct of failing to place guardrails on Crib Creek Bridge was a substantial factor in causing the injuries.... Therefore, DOTD is liable to plaintiffs for the damages sustained."
Id. at 6-7; 648 So.2d at 902 (emphasis in original).
Similarly, in the case sub judice, the lack of safety shoes on the inmate work crew did not cause the tree stump to slip from Michael Fletcher's hands and land on Black's foot. However, this accident does not relieve the City of its contractual duty to provide adequate safety equipment to the inmates. The City's failure to provide safety equipment, in particular safety shoes, to plaintiff was a substantial factor in causing his injuries. Therefore, the City is liable to Black for the damages he sustained.

NEGLIGENCE OF MICHAEL FLETCHER
The following general tort principles are applicable to determine whether the trial court properly found Michael Fletcher's negligence to be the sole cause of the plaintiff's injuries:
(1) Actionable negligence results from the creation or maintenance of an unreasonable risk of harm to others.
(2) Failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution, and foresight does not constitute negligence; one is required only to use reasonable precautions.
(3) Conduct is not negligent if it is in accord with that of reasonably prudent persons faced with similar conditions and circumstances.
Smolinski v. Taulli, 276 So.2d 286 (La. 1973) (and cases cited therein).
Measured by this test, we cannot say that Fletcher's actions were negligent. Fletcher was trying to flip the stump into a ravine when it slipped from his hands.[5] According to Black, the accident happened in a "split second." Although perhaps Fletcher should have waited for assistance before attempting to move the stump, we do not judge his actions in hindsight. Fletcher and Black had worked together, without incident, all morning on the day of the accident, and there was no reason for Fletcher to anticipate that extraordinary care was called for in picking up this particular tree stump. Fletcher's actions were reasonable and did not fall below the standard of conduct expected of an ordinary prudent person faced with similar circumstances. Therefore, we decline to allocate any share of fault to Fletcher in causing plaintiff's injuries.

NEGLIGENCE OF THE STATE
Under the facts of this case, we find no negligence on the part of the State that contributed to plaintiff's harm. The State entered into a valid contract with the City of DeQuincy which required the City to provide adequate safety equipment to the inmates assigned to the work crew. Sonny Johnson conceded at trial that LCIS officials were not informed of the kind of work the inmates were going to be doing on any particular day. It is therefore impossible for LCIS to have known that on January 12, 1989, Richard Black would be asked to fell timber, a task which requires steel-toed safety boots. The *276 City undertook a contractual duty to ensure that the inmates would be provided safety equipment necessary for tasks which its supervisors assigned, and we do not fault the State for the City's breach of its duty.

QUANTUM
The trier of fact is granted much discretion in the award of general damages, i.e., those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or life style which cannot be measured definitively in terms of money. Anderson v. Welding Testing Lab., Inc., 304 So.2d 351 (La.1974). The question on appeal is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Montgomery v. Opelousas General Hosp., 546 So.2d 621 (La.App. 3d Cir.), writ denied, 551 So.2d 630 (La.1989) (and cases cited therein).
Appellate review of general damage awards involves a two step process. The first inquiry is whether the award for the particular injury under the circumstances is a clear abuse of the much discretion of the trier of fact. Reck v. Stevens, 373 So.2d 498 (La.1979). If an abuse of discretion is found, then the second inquiry allows an appellate court to review prior awards to determine the highest or lowest award reasonably within the trier of fact's discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La. 1976). However, as stated by the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994):
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Id. at 1261.
Guided by these principles in our review of the medical evidence and the testimony presented, we cannot say that the general damage award of $35,000, which includes pain and suffering, disability, and all medicals, is either abusively high, as the defendants contend, or abusively low, as the plaintiff contends. Black testified that he was in excruciating pain after the accident. He received only basic medical treatment (cleaning and bandaging of his toe) from the time that the accident occurred until he was admitted to Charity Hospital, a span of more than twelve hours. Black testified that after his toe was amputated, the pain was so severe that he felt "like they had cut off my whole leg." He was ultimately assigned a 75 percent disability of his right great toe and a 14 percent disability of his right foot because of the injury. However, he has no functional disability and is capable of full work duty. In fact, Black stated at trial that he presently has no problems getting around on his foot and can generally do the things he did before the accident occurred. He was even able to return to his previous employment as a house mover. Based on the record before us, we find no error in the award of the trial court.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. We recast the judgment in accordance with the views expressed herein:

*277 IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of plaintiff, Richard Black, and against defendant, the City of DeQuincy, finding the City of DeQuincy 100 percent at fault in causing plaintiff's damages.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the plaintiff's demand against the State of Louisiana, Through the Department of Public Safety and Corrections, is hereby dismissed with prejudice.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of plaintiff, Richard Black, and against defendant, the City of DeQuincy, in the full and true sum of THIRTY-FIVE THOUSAND AND NO/100 ($35,000.00) DOLLARS, plus legal interest from the date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the cross claim filed by the State of Louisiana, Through the Department of Public Safety and Corrections, is hereby dismissed with prejudice.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the cross claim filed by the City of DeQuincy is hereby dismissed with prejudice.
Costs of trial and of this appeal are assessed to the City of DeQuincy.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

APPENDIX A

AGREEMENT BETWEEN

CITY OF DEQUINCY

LOUISIANA CORRECTIONAL AND INDUSTRIAL SCHOOL

UNIT OF

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
1. PURPOSE. This agreement is entered into for the purpose of establishing a work assignment for fifteen (15) offenders to work for the City of DeQuincy, hereinafter referred to as "Contractor," to maintain the upkeep of parks, grounds, museum and recreational facilities.
2. AUTHORITY. R.S. 15:832 grants to the Department of Public Safety and Corrections the power to enter into contractual agreements for the use of inmate labor for the conservation of natural resources or the construction and maintenance of public works. R.S. 15:836 grants to the Department of Public Safety and Corrections power to enter into contractual agreements with other departments of this state, or any political subdivision thereof, with private agencies and with the federal government with respect to the discharge of their respective responsibilities.
3. AGREEMENT. As a cooperative effort between the Department of Public Safety and Corrections, and Contractor for the purpose of achieving benefit for both parties and the State of Louisiana, the following agreements are made:
A. Contractor agrees to provide:
(1) transportation for offenders performing services for the contractor to and from the institution, in a vehicle equipped with a 2-way radio
(2) adequate security and direct supervision of the offender work crew
(3) noon meals for the offender work crew
(4) funds for the incentive pay for the offenders at the rate of 20 cents per hour per offender. Adult offenders receiving Double Good Time will not receive monetary compensation for work done on this public service crew; however, monies received for work done by these offenders will be deposited in the Inmate Welfare Fund of this institution
(5) Provide reports to Louisiana Correctional and Industrial School as to amount and quality of offender work and as to any behavioral problems of offenders
(6) Report any escape or criminal activity or injury to any offender immediately to the Warden of Louisiana Correctional and Industrial School

*278 (7) Provide heavy equipment as may be necessary beyond the general hand tool category
(8) Provide the necessary safety equipment, including but not limited to safety glasses or goggles, hard hats and safety shoes if not provided by the institution
(9) Provide adequate advance notice to the Warden of Louisiana Correctional and Industrial School when the transportation/work schedule will be deviated from and/or cancelled on a particular day
(10) Indemnify and hold harmless the Department of Public Safety and Corrections for any damages of any kind occasioned through negligent and/or intentional acts of the Contractor and its employees
The Louisiana Correctional and Industrial School in turn agrees to:
(1) Select no more than fifteen (15) offenders to perform the designated work for the contractor
(2) Be responsible for the calculation and disbursement of offender's incentive pay
4. TERM. The term of this agreement shall be for twelve (12) months commencing on November 1, 1988 and terminating on October 31, 1989. This agreement will be automatically renewed for one year unless either party notifies the other in writing thirty (30) days prior to the expiration of the agreement. In the event of an emergency situation involving the security of the Louisiana Correctional and Industrial School or the parish wherein the work crews perform, the Department of Public Safety and Corrections may immediately suspend the terms of this agreement during the existence of the emergency without prior notice to the Contractor. The Contractor shall be informed of such a suspension as soon thereafter as is practical.

WITNESSES:
_____________ /s/ Gary W. Cooper, Mayor
_____________ City of DeQuincy
_____________ Contractor
_____________ /s/ Bruce N. Lynn, Secretary
_____________ Department of Public
_____________ Safety and Corrections
This is to certify that there are no persons displaced because prison labor is being utilized in the work crew for the City of DeQuincy.
 /s/ Gary W. Cooper, Mayor
 City of DeQuincy
NOTES
[1] The contract is reproduced as Appendix A.
[2] Michael Fletcher was not named as a defendant in the plaintiff's suit.
[3] Plaintiff stipulated at trial that he waived any claim to loss of earning capacity.
[4] This author dissented from the majority's reducing the negligence of DOTD.
[5] There is no allegation by any party that Fletcher intentionally threw the tree stump at Black.