724 So.2d 834 (1998)
Charles D. SOILEAU, Plaintiff-Appellant,
v.
The STATE of Louisiana Through The DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT OF the STATE OF LOUISIANA, Defendant-Appellee.
No. 97-1541.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1998.
*836 Anthony Craig Dupre, Ville Platte, for Charles D. Soileau.
Timothy Alan Maragos, Baton Rouge, for State of Louisiana, through DOTD.
Before DOUCET, C.J., and YELVERTON and AMY, Judges.
AMY, Judge.
The plaintiff filed suit against the State to recover damages for injuries sustained when his vehicle struck a bridge on Louisiana Highway 3042. The plaintiff alleges that these injuries would not have occurred, or would not have been as serious, in the presence of guardrails on the bridge. Following a trial, the jury found in favor of the State. The plaintiff appeals arguing that the jury's factual findings were interdicted by legal errors made during the course of the trial. For the following reasons, we affirm.

Factual and Procedural Background
The single-car accident at issue in this matter occurred on December 10, 1994 on Louisiana Highway 3042. The record reflects that, on that evening, the plaintiff, Charles Soileau, was returning home and was northbound on Highway 3042 when he lost control of his truck and crossed into the southbound travel lane, ultimately striking a bridge. Following the accident, he was assisted by a passerby, Johnny Bourque, and, later, by his father, who was called to the scene. The plaintiff was taken to a local hospital for treatment of injuries. In part, the plaintiff was diagnosed with knee and neck injuries. The record reflects that, as a result of the latter injury, the plaintiff wore a halo device for several months in order to stabilize the cervical spine.
The plaintiff filed suit against the defendant, The Department of Transportation and Development of the State of Louisiana, on December 4, 1995. In this original petition, the plaintiff alleged that "[a]s he negotiated the sharp curve immediately preceding the bridge crossing Chicot Lake ... [his] vehicle swerved onto the shoulder and [he] was unable to bring the vehicle under control." Further, he alleged that, suddenly, his "vehicle struck the bridge abutment, causing [him] to be ejected."
In a supplemental petition, the plaintiff asserted that the absence of a guardrail on the bridge "was a direct and proximate cause" of his injuries. Further, the plaintiff admitted that "the causation of his leaving the road and striking the bridge abutment was due to his fault, negligence, or inattentiveness," but that the "defective nature of the bridge" increased the severity of his injuries. Alternatively, however, the plaintiff alleged that the loss of control was "due to the fault or negligence of DOTD in improperly designing and/or maintaining the highway, its shoulders and/or approaches to Indian Hills bridge."
Pursuant to these allegations, the defendant sought damages under both La.Civ. Code art. 2315 and La.Civ.Code art. 2317.[1] Among the damages sought by the plaintiff were medical expenses, loss of future earning capacity, and pain, suffering, and loss of enjoyment of life.
Following a trial lasting several days and, at which, the plaintiff's blood-alcohol level at the time of the accident was an issue, the jury found in favor of the State responding "No" to the following interrogatory: "Do you find that the DOTD breached its duty by *837 failing to install guardrails on Indian Hills Bridge."
The plaintiff appeals asserting several legal errors. First, the plaintiff argues that the trial court improperly limited each party to five special jury instructions and, further, that two of the defendant's special instructions were misleading. Next, the plaintiff argues that the trial court improperly allowed two witnesses to offer legal opinions and also erred in denying the opportunity for the plaintiff to cross-examine one of the witnesses with regard to prior testimony reported in a supreme court decision. In his final assignment of error, the plaintiff argues that no evidence of his own fault should have been permitted as it was irrelevant and prejudicial.

Discussion

Jury Instructions
In his first assignment of error, the plaintiff argues that the trial court arbitrarily limited each party to five special jury charges. Not only does the plaintiff argue that such a limitation was error given the complex nature of the case at bar, but the plaintiff further argues that the jury was improperly charged in two respects. In particular, Soileau argues that the trial court improperly instructed the jury that he had to "absolve himself of any negligence in order to recover." He argues that this instruction is contrary to the concept of comparative fault. Further, the plaintiff maintains that the trial court erred in instructing the jury that DOTD owed no duty toward a grossly negligent driver and that this erroneous statement of the law was exacerbated by the failure to define the term "grossly negligent."
We first consider whether the plaintiff's objection with regard to the special jury charges was properly preserved for appeal. La.Code Civ.P. art. 1793(C) provides as follows:
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objections. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
(Emphasis added.) Furthermore, jurisprudence in this area clearly indicates "that the party asserting the objection must specifically state the objection on the record to preserve the objection as a potential assignment of error on appeal." Clay v. International Harvester Co., 95-1572, p. 11-12 (La. App. 3 Cir. 5/8/96); 674 So.2d 398, 406. See also Busby v. St. Paul Ins. Co., 95-2128 (La.App. 1 Cir. 5/10/96); 673 So.2d 320, writ denied, 96-1519 (La.9/20/96); 679 So.2d 443.
Reference to the transcript in this matter indicates that although the plaintiff objected to the special jury charges submitted by the defendant, no specific grounds for the objection were given. The transcript reveals the following:
BY THE COURT:
The record is on. We're having a charge conference right now. Number one, both attorneys agree that I can use the general charge that was submitted by the DOTD. There is no problem with that. Now, on the special charges, Mr. Plaintiff, I believe that you have objection to the ones that the State submitted. If you want to protect yourself object to them all.
BY MR. DUPRE, Counsel for Plaintiff:
I do. I generally object to the five for the record, and I specifically object to Number 5.
As this colloquy demonstrates, no grounds for the objection were entered onto the record. Therefore, pursuant to La.Code Civ.P. art. 1793(C) and applicable jurisprudence, the objection was insufficiently preserved for appeal. However, even if properly preserved, review of the instructions reveals no reversible error.
As for Soileau's contention that the trial court erred in limiting each party to five special jury instructions, a panel of this court has recently held as follows:
As a practical matter, a "trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; he must, however, correctly charge the jury." Doyle v. Picadilly Cafeterias, *838 576 So.2d 1143, 1152 (La.App. 3 Cir.1991); Oatis v. Catalytic, Inc., 433 So.2d 328 (La.App. 3rd Cir.), writ denied, 441 So.2d 210, 215 (La.1983). In this instance, the trial judge has great discretion in limiting the number of jury charges awarded to each party.
Ardoin v. Murdock, 97-1468, p. 8 (La.App. 3 Cir. 4/15/98); 711 So.2d 837, 842. As explained in Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1152 (La.App. 3 Cir.1991), "[a]dequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues." Further, "[t]he adequacy of jury instructions must be determined in light of the jury instructions as a whole." Id. at 1152.
Therefore, individual instructions complained of by the plaintiff must be examined in the context of the instructions as a whole. First, the plaintiff argues that the following instruction improperly informed the jury that, in order for the plaintiff to recover, he must prove that he was not negligent in causing the accident:
A motorist who leaves his lan[e] of travel is presumed negligent, and must show that he was not guilty of any dereliction, however slight.
Soileau asserts that this instruction advised the jury that he could not recover unless he proved the absence of his own negligence. Such an instruction, Soileau maintains, is contrary to the principle of comparative fault.
As explained by the Louisiana Supreme Court in Shephard on Behalf of Shephard v. Scheeler, 96-1690, p. 18 (La.10/21/97); 701 So.2d 1308, 1318:
A presumption of negligence arises when a driver leaves his own lane of traffic and strikes another vehicle. In such a case, the burden of proof on such a defendant motorist is to show that he was not guilty of any dereliction, however slight. A motorist has a duty to maintain control of his vehicle, even in rainy weather. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742.
Contrary to the plaintiff's assertion, the presumption of negligence arising against a driver who leaves his own lane of travel relates only to his own negligence and is a factor to be considered in the assignment of any comparative fault. Furthermore, the jury was instructed as to comparative fault. The trial judge informed the jury, in part, as follows:
If you find that the State, DOTD, defendant, was negligent and plaintiff, Charles D. Soileau, was contributorily negligent and that that the negligence of each was the proximate cause of the accident and plaintiff's injuries, then you must apportion fault between the parties in determining percentages of fault, you should consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages which plaintiff claims.
....
If you conclude that the plaintiff has established the preceding elements of his case, then you must determine whether the defendant has proved that the plaintiff failed to conduct himself in accordance with the standard expected of him and has therefore contributed to his own injury. It is the law of Louisiana that the sub-standard conduct of an injured person[] which contributes to his own injury will reduce his recovery, but will not bar it entirely.
In this case, the standard applicable to the plaintiff's conduct is the requirement[] that he exercise that degree of care which we might reasonably expect a person to exercise for his own safety and protection. On this issue, the defendant has the burden of proof. In other words, the defendant has the burden of establishing by a preponderance of the evidence that the plaintiff in this case failed to conform to that standard and by that failure contributed to his own injury. If the defendant convinces you of that, then you must take into account the degree of fault attributable to the injured person in returning your verdict.
Thus, the jury was instructed as to comparative fault. The special instruction at issue dealt only with the plaintiff's own negligence and did not preclude recovery by the plaintiff.
*839 The second special instruction put at issue by the plaintiff is that regarding the duty owed by the DOTD. The trial court instructed the jury as follows:
The DOTD has a duty to maintain the public highways in a condition that is reasonably safe not only for persons exercising ordinary care and reasonable prudence, but also for those who are slightly exceeding the speed limit or who are momentarily inattentive. However, this duty does not extend to protect motorists against harm which would not have occurred but for their grossly negligent operation of a motor vehicle.
Jurisprudence in this area clearly indicates that the State must maintain highways in a reasonably safe condition for persons exercising reasonable care. With regard to this instruction, the plaintiff argues in his brief that "[t]he concept embodied therein, that DOTD is absolved from its duty based on the degree of another's fault in causing the accident, has been squarely and unequivocally rejected by this Court as well as the Supreme Court in Campbell."
Reference to Campbell v. Louisiana Dept. of Transp. & Dev., 94-1052 (La.1/17/95); 648 So.2d 898, advanced by the plaintiff in the argument above, indicates that the Louisiana Supreme Court clearly found that there may be multiple causes-in-fact in a tort suit. This concept is apparent in the comparative fault issues on which the jury was instructed. However, the instruction dealing with gross negligence relates to the scope of the duty owed, i.e., legal cause, a separate element necessary for recovery. Despite the plaintiff's argument, multiple causes-in-fact, rather than legal cause, is the central focus of Campbell and, further, there is jurisprudential support for the concept advanced in the instruction. See Miller v. State, DOTD, 95-548 (La.App. 3 Cir. 3/20/96); 679 So.2d 134, writ denied, 96-1674 (La.10/11/96); 680 So.2d 650; Curry v. Johnson, 590 So.2d 1213 (La. App. 1 Cir.1991).
Based on this review, we find this assignment to be without merit.

Questioning of Witnesses
In his next assignment of error, Soileau contends that the trial court erred in allowing two witnesses to be questioned as to the applicability of AASHTO[2] guidelines to the bridge where the accident occurred. He argues that both witnesses were erroneously allowed to render a legal opinion as to the applicability of the guidelines.
The questioning complained of initially arose during the testimony of William Hickey, a road design engineer retired from DOTD. Hickey, who was called by the plaintiff, was not qualified as an expert witness. Counsel for the plaintiff, Anthony Dupre, told the judge that he was "just calling him for his knowledge of their policies and things of that sort." During the direct examination of Hickey, the following exchange occurred between Dupre and Hickey:
Q.... Is the State of Louisiana at the present time mandated to follow AASHTO Standards?
A. State law requires the department insofar as practical to follow AASHTO guidelines. Yes.
During the cross-examination of Hickey, the exchange now complained of by the plaintiff occurred between Hickey and the Assistant Attorney General representing the State, Timothy Maragos:
Q. Now, you were asked if AASHTO Standards apply in LouisianaI don't remember exactly the question,but something like that. I think you said your answer was yes?
A. Insofar as practical the Department is to adopt standards following AASHTO guidelines.
Q. Is that a law, a statute somewhere?
A. Yes, it is.
Q. Do you remember off hand?
....
Q. Are there times under the statute when AASHTO applies and times when they are not, or is it uniform no matter the situation or the project?

BY MR. DUPRE, Counsel for Plaintiff:

*840 Excuse me, Your Honor. May I approach the bench without removing the jury?
BY THE COURT:
Yes. All right. Send the jury out. The record will show that plaintiff's counsel has made an objection and it requires argument for the record and therefore the jury has to be sent out. Mr. Dupre, please specify your objection.

BY MR. DUPRE, Counsel for Plaintiff:
Your Honor, the question that was asked by Mr. Maragos, he has handed the witness a copy of R.S. 48:35 and he has asked the witness if under this statute certain times AASHTO applies and certain times it does not apply.
BY THE COURT:
All right.

BY MR. DUPRE, Counsel for Plaintiff:
That is calling for a legal opinion and this witness cannot make that determination.
BY THE COURT:
Just a minute. Do you know the answer to that?
A. Yes, sir.
BY THE COURT:
All right. What is it? There is no jury here. Tell me.
A. The answer is that if the law gives the chief engineer the right to set lesser standards than AASHTO in situations where the work is being done within the existing right away.
BY THE COURT:
All right. Mr. Dupre, what's wrong with letting the jury hear that answer?

BY MR. DUPRE, Counsel for Plaintiff:
I'll withdraw my objection.
....
BY THE COURT:
Counsel for Plaintiff withdraws his objection.
Q. Mr. Hickey, the best as I can repeat the language, the question was, are there times which the legislature mandates that the DOTD use AASHTO and times when it does not have to or, does it require it in all instances.
A. The law gives the chief engineer the option of setting standards that are less than AASHTO standards as long as the work is done within the existing right of way. He can set standards and and approve standards that don't meet AASHTO for maintenance type work, minor repair work that stays within the existing highway right of way. Right away [sic] that the state already owns.
(Emphasis added.)
According to the plaintiff's argument, "Hickey's testimony was an interpretation by a state employee as to the meaning of Louisiana law. This is an inherent impingement upon the province of the Court to instruct the jury as to the correct law applicable to the case." However, despite this argument, reference to the above-quoted colloquy evidences that the counsel for the plaintiff withdrew his objection to Hickey's testimony in this area.
La.Code Evid. art. 103 provides as follows:
A. Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Ruling admitting evidence. When the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection...
Therefore, pursuant to this article, and due to the plaintiff's counsel's withdrawal of his objection, the plaintiff cannot now complain of this admission of Hickey's testimony. Thus, we turn to the remainder of the testimony at issue.
David Hall was accepted as an expert in accident reconstruction, traffic engineering, and road design. During questioning by defense counsel, Hall testified that AASHTO Guidelines, which may have required the installation of guardrails, did not apply to the overlay project conducted on the bridge in 1985. Defense counsel then asked Hall whether he agreed with Hickey's testimony *841 regarding the applicability of those standards in Louisiana. The following colloquy is found in the record:
Q. All right. Now, you heard Mr. Hickey testify previously. Correct?
A. Yes.
Q. And he testified about his understanding and how he and his office operated under the provisions of a state law that he read. Do you agree or disagree with that? Do you have an opinion about that?
A. With Mr. Hickey?
Q. Yes.
....

BY MR. DUPRE, Counsel for Plaintiff:
Your Honor, my objection is I understand that the reason that Mr. Hickey was allowed to testify as to his interpretation of the Louisiana Statute that he is referring to which incidentally is not even in the record, but it's the law so I guess it doesn't need to be, but this manhe was charged with enforcing the policy. He felt that it was within his job title discription [sic] to interpret that policy because it was a Louisiana Statute. This gentleman is notI mean he's interpreting a Louisiana State Statute. He's not, you know, that's not what he is charged with doing. He is an independent as he testified expert. It is not his job to evaluate what Louisiana lawyers, what Louisiana policy is, what ...
BY THE COURT:
What you're saying that because he's from Texas?

BY MR. DUPRE, Counsel for Plaintiff:
No, sir. I'm saying that because he does not work for the department. I understood the Court to say that it was part of his job. He could identify that statute.
....
BY THE COURT:
No, the reason I let it in was because you withdrew your objection.
....

BY MR. DUPRE, Counsel for Plaintiff:
My objection is that he is from Texas. He does notit was never in the course of his duty to evaluate the discretion of the Department of Highways. He was never in that position to interpret what his job was in relation to that statute. Now, he is going to give a legal opinion as to what a Louisiana ...
....
BY THE COURT:
He is not going to comment on Hickey's opinion. He is going to testify whether or not hewaitwe're going to find out right now. Look, Hall, the jury is not in here. We can talk freely. All right. Do you agree or disagree with Hickey's opinion.
A. I agree to his opinion.

BY MR. DUPRE, Counsel for Plaintiff:
As to the interpretation of a revised statute.

BY MR. MARAGOS, Counsel for Defendant:
As to Hickey's application of a standard which governed ...
BY THE COURT:
Look. You are going to ask the question and he is going to answeryou're going to answer it just like you just answered it. You hear?
A. Yes, sir.
BY THE COURT:
Your objection is overruled. Bring the jury back in.
....
Q. Mr. Hall, do you agree or disagree with Mr. Hickey's statements regarding the application or non-application of AASHTO toregarding the non-application of AASHTO to overlay projects?
A. I agree with him.
The plaintiff complains of this testimony arguing on appeal, as he did at trial, that Hall was permitted to render a legal opinion. Further, the plaintiff contends in his brief that Hall, who was accepted as an expert in traffic engineering and road design, was erroneously allowed to testify as to the applicability of the guidelines to the bridge in question. *842 He maintains that this testimony did not fall within his areas of expertise.[3]
We first address the contention that Hall was improperly permitted to render a legal opinion. Our review of the record indicates that Hall did not render a legal opinion, rather, he indicated only whether he agreed or disagreed with the opinion offered by Hickey, an opinion ultimately not objected to by the plaintiff. In this regard, we find no error by the trial court in allowing this question to be asked of the expert witness.
Furthermore, we cannot find that the trial court abused his discretion in allowing Hall, who was qualified as an expert in road design, to testify as to the applicability of AASHTO to a bridge. It is not unreasonable to find that this area of expertise encompasses the inclusion of guardrails to a bridge. Therefore, we do not find that the trial court abused its discretion in allowing the testimony in this area.

Prior Inconsistent Statement
The plaintiff next contends that the trial court erred in refusing to allow examination of William Hickey based upon his purported testimony reported in a Louisiana Supreme Court case, Campbell, 94-1052; 648 So.2d 898.
The transcript of the hearing indicates the following colloquy between counsel for the plaintiff and Hickey:
Q. Did you ever state, did you ever state that since February of '74, DOTD has been adding guardrails to existing bridges during highway reconstruction or overlay projects in accordance with Standard Plan GR 54?
A. I think I said that when we added guardrails Standard Plan GR 54 would be used.
Q. That's not what I asked you though. I asked you to say if you ever said that.
A. I don't know. The intent is to go to the standard plan that just gives the detail of how the guardrail is to be built. If guardrail is called for in the project then those plans will be used to tell the contractor how to build it.
Q. You still didn't answer my question. Did you ever say that?
A. I don't recall.
Q. Okay.
A. Let me show you something. I'm going to refer you to some more law, but this came from a Court, the Supreme Court, Page 3. Let me underline it for you. Talking about your testimony. What does that say?

BY MR. MARAGOS, Counsel for Defendant:
What are you referring to please?
Q. I'm referring to this.
BY THE COURT:
Did you show him? Did you show counsel?
Q. This is a Supreme Court Decision ...
BY THE COURT:
Ya'll come over here.

OBJECTION: BY MR. MARAGOS, Counsel for Defendant:
Now, let me object to the question.
BY THE COURT:
Sustained. No reading from the Supreme Court decision. Proceed.
Later, the trial court accepted a copy of the supreme court decision referred to by the plaintiff's counsel as a proffered exhibit. In explaining why he didn't allow questioning regarding the case, the trial court stated as follows:
The reason that I didn't permit you to do that was because that was a reported case. It is a Southern Reporter case. The Supreme Court did not quote testimony of Mr. Hickey. They just commented on *843 what he testified. Now, I don't know the circumstances of Campbell. I don't know what the examination by the lawyers revealed. I don't know if the Supreme Court took it out of context or what they did and that is why I didn't admit it. I don't think you can use a Court decision, a judicial decision, to impeach a witness, to show a prior inconsistent statement. Now, I will say this. If the Court would have quoted his testimony and set it forth at length then I would have permitted you to go into that. Didn't you say in the Campbell case such and such and I quote to you. But, that is not what the decision does.
Reference to Campbell indicates that the supreme court merely discussed Hickey's testimony in that case. Therefore, we find no error in the lower court's refusal to allow questioning of Hickey along these lines. We find this assignment to be without merit.

Motion in Limine
In his final assignment of error, Soileau maintains that the trial court erred in denying a motion in limine filed to exclude evidence of Soileau's fault in causing the accident. In particular, the plaintiff maintains that evidence of his blood-alcohol level should have been excluded. He asserts that this is so since the cause of the accident had been admitted and, therefore, any evidence related to the cause of the accident was irrelevant. In his brief to this court, he "concedes that, had plaintiff not admitted fault in causing the accident occur [sic], the evidence would have been relevant and properly admitted. However, under the particular facts before the court such evidence was calculated only to create prejudice against the plaintiff."[4] He further maintains that, even if relevant, the evidence should have been excluded as prejudicial pursuant to La.Code Evid. art. 403.[5]
Following the denial of the plaintiff's motion in limine in this regard, this court reviewed the denial pursuant to a writ application by the plaintiff. A panel of this court denied the application by the following language: "We find no error in the ruling of the trial court." Reference to the writ application indicates that the admission of evidence related to the plaintiff's blood-alcohol level was reviewed by this court at that time.
As this issue has been previously reviewed by this court, we are mindful of the "law of the case" doctrine. As explained by the Louisiana Supreme Court in Petition of Sewerage & Water Bd. of New Orleans, 278 So.2d 81 (La.1973), this doctrine involves a variety of factors. The court explained as follows:
The law of the case principle relates to (a) the binding force of trial court rulings *844 during later stages of the trial, (b) the conclusive effects of appellate rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue.
Id. at 83. This policy, however, is discretionary and should not be applied in the presence of clear error or where application would effect an obvious injustice. Ducote v. City of Alexandria, 97-947 (La.App. 3 Cir. 2/4/98); 706 So.2d 673, writ denied, 98-1061 (La.5/29/98); 720 So.2d 671. Our review of the record in this matter reveals no clear error in this court's previous decision. Rather, it appears that, whether conceded by the plaintiff or not, fault of the plaintiff is relevant, in the least, for purposes of apportionment of fault. Neither do we conclude that such relevant information is outweighed by any prejudicial impact so as to be excluded by La.Code Evid. art. 403. Finding no clear error in this court's prior review of the issue, we decline to revisit this matter.

DECREE
For the foregoing reasons, the decision of the lower court is affirmed. All costs of this appeal are assigned to the plaintiff, Charles D. Soileau.
AFFIRMED.
NOTES
[1] In Campbell v. Louisiana Dept. of Transp. & Dev., 94-1052, p. 5 (La.1/17/95); 648 So.2d 898, 901, the court explained the similarities and differences of these two separate theories of recovery:

Next, we must determine whether DOTD was at fault, DOTD's liability may arise under a theory of negligence, La.Civ.Code art. 2315, or a theory of strict liability, La.Civ.Code art. 2317. The distinction between recovery under these theories is that under strict liability, the plaintiff is relieved of proving the owner or custodian of the thing which caused the damage knew or should have known of the risk involved. See Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 (La.1982). Nevertheless, La.R.S. 9:2800 as applied to government defendants requires a plaintiff to prove that the public entity has "actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so." Therefore, under either theory the analysis is the same.
[2] American Association of State Highway and Transportation Officials
[3] The plaintiff makes the following argument in his brief:

David Hall was tendered by DOTD as an expert in traffic engineering, road design and accident reconstruction. He was not offered as an expert in bridge design and was neither tendered nor accepted as a bridge expert of any sort. Furthermore, he was never tendered as an expert in Louisiana law nor in the application of the policies of the Louisiana Department of Transportation under Louisiana or Federal Law. Yet, Mr. Hall was allowed to testify as to the law and policy of this state and its applicability to Indian Hills Bridge.
[4] Contrary to the plaintiff's assertion in this assignment, the cause of the vehicle leaving the roadway appears to have been at issue. During the questioning of Soileau by his counsel, the following colloquy was heard regarding the petition filed in this matter:

Q. Mr. Soileau, you were reading from a document called Plaintiff's Second Supplemental and Amending Petition, and Mr. Maragos asked you to read like Paragraph 8 A. Okay? Let's read some other part of the document. We're going to just read a part of it. Read Paragraph 8.
A. Paragraph 8. "In the absence of a guardrail and all other defective conditions surrounding Indian Hills Bridge, which plaintiff's truck was a direct and proximate cause of the harm and/or damages sustained by the plaintiff in the accident complained of."
Q. So, in this paragraph he asked you to admit when reading the other paragraph that you were saying it was your fault for causing the accident. In this paragraph who are you blaming?
A. The State, the DOTD.
Q. Okay. And, of course you read Paragraph 8A.
A. Right.
Q. Let's read another paragraph. Read Paragraph 8B in the same document.
A. "In the alternative plaintiff avers that the causation of his leaving the road surface and striking the bridge abutment was due to the fault or negligence of DOTD in improperly designing and/or maintaining the highway, it's shoulders, and/or approaches to Indian Hills Bridge."
Q. So, in Paragraph 8B who are you saying was at fault in the cause of your injury?
A. DOTD.
[5] Art. 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.